RUSSELL J. FOGELIN & others,[1] trustees, *vs.*
ROBERT C. NORDBLOM & others.[2]

Suffolk. January 7, 1988. — April 19, 1988.

Present: HENNESSEY, C.J., ABRAMS, LYNCH, & O'CONNOR, JJ.

*Trust*, Business trust, Voting trust, Consent of beneficiary, Amendment
and modification, Interest of beneficiary, Negligence of trustee. *Business
Trust. Fiduciary. Uniform Gifts to Minors Act.*

The trustees of a voting trust, who held the shares of a business trust estab-
lished under G. L. c. 182, were without power to vote on an amendment
to the business trust instrument which, by the terms of the business trust,
required a two-thirds vote of each class of shareholders, voting sepa-
rately, and which, if validly approved, would have had the effect of
reducing the value of the liquidation rights of the business trust's preferred
shareholders. [223-224]

Holders of preferred shares of a business trust, in their capacity as custodians
under the Uniform Gifts to Minors Act, as in effect in 1972, were
without power to consent to an amendment to the trust instrument which
would have had the undisputed effect of reducing the liquidation value
of the custodial property, for no consideration and for the sole benefit
of the donor. [224-226]

Where an amendment to a business trust had been adopted on the basis of con-
sent which certain shareholders, acting in their capacity as custodians
for minor beneficiaries under the Uniform Gifts to Minors Act, were
without power to give, the appropriate remedy was a declaration that
the amendment was void and of no effect. [226-227]

[1] Robert C. Nordblom and Rodger P. Nordblom, trustees of Boston Rein-
vestment Trust.

[2] Anne N. Dodge, Carolyn Los, Robert Winder Nordblom, Peter Crocker
Nordblom, Marjorie Lee Cote, Ailene M. Lewis, Leslie C. Will, Richard
P. Robinson and Mark Ivers Robinson; June M. Robinson, individually
and as trustee of voting trust agreement, dated March 16, 1972, for share-
holders of Boston Reinvestment Trust; Rodger P. Nordbloom, individually,
as trustee of voting trust agreement, dated March 16, 1972, and as custodian
under the Massachusetts Uniform Gifts to Minors Act, for the benefit of
Thomas Stephen Dodge, Kristen Adams Dodge, Peter Demetrios Los and
Kathryn Anne Los; John C. Robinson, Mary W. Nordblom and Russell J.
Fogelin, as trustees of voting trust agreement dated March 16, 1972.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on June 30, 1986.

On transfer to the Superior Court Department, the case was reported to the Appeals Court by *John Paul Sullivan,* J., on a stipulation of facts. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Raymond W. Rawlings* for Russell J. Fogelin & others.

*John H. Clymer* for Anne N. Dodge & others.

*Ronald F. Kehoe* (*Michael P. Kenyon* with him) for Robert C. Nordblom.

LYNCH, J. In this declaratory judgment action, brought by the trustees of the Boston Reinvestment Trust (BRT or trust), a business trust established pursuant to G. L. c. 182, we are asked to determine the validity of two amendments to the trust. The defendants who appeared and answered in this action are Anne N. Dodge and other grandchildren (grandchildren) of Robert C. Nordblom (Nordblom), beneficiaries of the trust who hold voting trust receipts representing preferred shares of beneficial interest, and Nordblom, in his capacity as holder of voting trust receipts for all of the common shares of beneficial interest in the trust. Also named as defendants are the individuals who hold voting trust receipts for the remaining preferred shares,[3] and trustees of a voting trust, both present and former. The case was originally brought in the Supreme Judicial Court for Suffolk County where a single justice transferred it to the Superior Court. G. L. c. 211, § 4A. Pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1974), a judge of the Superior Court reported the case, upon stipulated facts, to the Appeals Court. We transferred the case upon our own motion.

As reported, the matters for our determination are:

"(1) whether the Court will declare that the '1972 Amendment' so called, to the Boston Reinvestment Trust is void or invalid in whole or in part;

"(2) whether the Court will order the plaintiffs to file and record the '1972 Amendment';

---

[3] Included in this category is Rodger P. Nordblom, the custodian under the Uniform Gifts to Minors Act, G. L. c. 201A, who holds voting trust receipts for preferred shares for the benefit of minor children, who are, apparently, four great-grandchildren of Nordblom.

"(3) whether the Court will declare that the '1969 Amendment,' so called, to the Boston Reinvestment Trust is void or invalid in whole or in part;

"(4) whether the Court will order the plaintiffs to file and record the '1969 Amendment'."

The relevant facts are as follows. On November 1, 1957, Nordblom, Rodger P. Nordblom and Russell J. Fogelin, as trustees, executed a declaration of trust establishing the BRT for the purpose of dealing in real estate. Nordblom was the owner of all 500 shares of the common stock of the trust then issued and outstanding. On October 30, 1969, pursuant to the provision of the 1957 declaration providing for amendment of the trust, Nordblom, as the sole shareholder, executed an amendment to the BRT trust declaration (1969 amendment). However, contrary to that provision, neither the amendment nor a trustee's certificate was filed with the Secretary of the Commonwealth or recorded in any registry of deeds.

The 1969 amendment authorized an increase in the number of common shares from 500 to 4,000, and the issuance of 6,000 preferred shares. The amendment also established the respective rights of common and preferred shareholders upon liquidation of the trust. In relevant part, in addition to cash payment based on the number of preferred shares plus accumulated and unpaid dividends, the preferred shareholders were entitled to share ratably among the preferred and common shareholders, without distinction as to the class, in the distribution of any assets remaining after the common shareholders received remaining realized earnings and profits of the trust. The 1969 amendment further provided that each common or preferred share "shall have one (1) vote in connection with any meeting or other action of the shareholders," and that, "[n]otwithstanding any other provisions of this instrument, no amendment of this Declaration of Trust may be effected which impairs or diminishes the preferences, voting powers and rights or privileges of any class of the shares of beneficial interest or otherwise adversely affects the rights of any class unless such amendment is approved by the holders of two-thirds (⅔) of each class, voting separately."

Between 1969 and 1971, the trust issued an additional 3,500 shares of common stock and 1,500 shares of preferred stock to Nordblom. Nordblom made gifts of the preferred stock to Rodger P. Nordblom and June M. Robinson, individually and in their capacities as custodians under the then-current version of Massachusetts Uniform Gifts to Minors Act, G. L. c. 201A, for the grandchildren, and to one adult grandchild directly.

On March 16, 1972, all of the shareholders and the voting trust trustees named therein executed a voting trust agreement. In accordance with the terms of the agreement, all shareholders exchanged their stock certificates for voting trust receipts, and the trustees of the trust became the sole shareholders of the BRT. The voting trust trustees were further accorded "full and exclusive power to vote the [shares] and in general to exercise all rights of a Shareholder of record of every kind and character." The voting trust agreement further provided that actions or instruments executed by the voting trust trustees would require a vote by a majority of the voting trustees. The designated trustees of the voting trust were Nordblom, Rodger P. Nordblom, Marjorie C. Nordblom, June M. Robinson, and Russell J. Fogelin. With exceptions not relevant here, the agreement provides that the voting trust shall last until December 31, 1992.

Less than three weeks later, on April 3, 1972, a document entitled "Amendment to Boston Reinvestment Trust" (1972 amendment) was executed by the same parties, who described themselves as BRT trustees, shareholders, and custodians. There was no signature block specifically identifying any of the signatures as that of a voting trustee. The 1972 amendment significantly diminished the liquidation rights of preferred shareholders. Under its terms, the liquidation value of the preferred shares would be approximately one-fourth of what their value would be under the terms of the 1969 amendment.[4] In addition, the 1972 amendment increased the approval necessary to further amend the preferences, voting powers, rights,

---

[4] The record does not reveal the comparative value of the preferred shares at the time the 1972 amendment was executed. Nonetheless, there can be no dispute that their value was diminished.

and privileges of any class of stock, from two-thirds of each class as provided by the 1969 amendment to seventy-five percent of each class.

Since the execution of the voting trust agreement and the 1972 amendment, Nordblom has made additional gifts of a total of 3,400 preferred shares to or for the benefit of the same parties as had earlier received shares, and to Rodger P. Nordblom, as custodian for four children apparently still in their minority. See note 3, *supra*.

The controversy here arises out of conflicting demands upon the BRT trustees relating to the 1972 amendment.[5] The grandchildren, who are the beneficial owners of preferred shares issued prior to the 1972 amendment, requested that the BRT trustees and Nordblom, as the shareholder of the common shares, agree that the 1972 amendment is void, that the trustees further agree never to record the amendment, and that the trustees take other appropriate steps to evidence the validity of the trust, as amended solely by the 1969 amendment. Nordblom, on the other hand, requested that the trustees record the 1972 amendment as well as the 1969 amendment, and provide him with a recordable certificate attesting to the effect of both amendments. At that time, Nordblom further stated, and it is one of the stipulated facts, that he desires to make further gifts of BRT stock to family members but is not able to do so because of the uncertainty of the liquidation value of said shares and the resulting uncertainty of the estate and gift tax consequences of any such transfers.

None of the arguments advanced by Nordblom persuades us that the 1972 amendment is valid. It is axiomatic that the BRT trustees stood in a fiduciary relationship to all of the beneficiaries of the trust and, therefore, had a duty not to favor one class of shareholders over another. The validity of the 1972 amendment, which benefited only the sole common shareholder who was also a BRT trustee, and correspondingly opera-

---

[5] We see no controversy appropriate for declaratory relief relating to the 1969 amendment. All parties agree that, despite the failure of the trustees to record, the 1969 amendment is valid and should be duly recorded by the trustees. *Trager* v. *Schwartz*, 345 Mass. 653 (1963).

ted solely to the detriment of the preferred shareholders, rests, therefore, on the validity of the assent of the preferred shareholders. See *Reynolds* v. *Remick,* 333 Mass. 1 (1955).

Such consent is required not only as a matter of common law, but also by that portion of clause six of the 1969 amendment, which provides for amendments diminishing the various rights of any class of shareholders only with the approval of two-thirds of each class, voting separately. Where a trust instrument explicitly provides for a power and method of modification, that power "must be exercised in strict conformity to its terms." *Phelps* v. *State St. Trust Co.,* 330 Mass. 511, 512 (1953). The rule applies equally to business trusts.

We begin our analysis of the question whether there was valid consent with an examination of the operation and effect of the voting trust. It is argued that the 1972 amendment is invalid since it was executed by the above noted individuals in their capacities as BRT trustees, shareholders, and custodians, but not as voting trust trustees. All of the parties apparently assume that, by the terms of the 1972 voting trust entered into prior to the 1972 amendment,[6] any decisions affecting the trust, including all further amendments, are to be determined solely by majority vote of the voting trustees.[7] Our reading of the voting trust agreement, in conjunction with both the 1969 and 1972 amendments, leads us to a different conclusion. We assume that, in so far as the voting trust was established by and between shareholders with the capacity to agree, in order to secure, by the agreement's own terms, "stability of policy and management of the [BRT]," the voting trust is valid.[8]

---

[6] The grandchildren suggest that, contrary to the facts to which they stipulated and the dates on the documents, the voting trust was prepared after the 1972 amendment. We ignore those assertions.

[7] The parties stipulate that, where, under the terms of the voting trust, the voting trust trustees are the sole shareholders of the BRT, subsequent amendments to the BRT, under the terms of the 1969 amendment, would merely require the consent of at least a majority of the trustees of the voting trust.

[8] Although we have serious questions concerning the authority of a custodian holding a substantial number of shares under the Uniform Gifts to Minors Act to delegate his duty and to sever the right to vote the shares in

Here, however, we are concerned with the validity of a decision
to reduce the rights of a class of shareholders. While there
may be many legitimate purposes of a voting trust, see e.g.
*Colbert* v. *Hennessey*, 351 Mass. 131 (1966), a voting trust
may not operate to circumvent or indirectly modify an explicit
trust provision pertaining to modifications which affect the
rights of a class of shareholders. Cf. *Lillard* v. *Lillard*, 63
Ohio App. 403 (1939). Accordingly, it was not for the voting
trustees to vote on a matter appropriately approved only by a
two-thirds vote of each class of shareholders, voting separately.
This construction of the interrelated but distinct operations of
the voting trust and the business trust is only further evidenced
by a provision in the 1972 amendment which requires separate
votes by each class of shareholders on such matters.

We, therefore, turn to the issues surrounding the validity of
the consent of the custodians who, pursuant to c. 201A, held
1,230 (82%) of a total 1,500 preferred shares issued at the
time the 1972 amendment was executed, and signed the docu-
ment in the capacity of custodians. Nordblom contends that
the action by the custodians, which would have the undisputed
effect of significantly reducing the value of the custodial prop-
erty, for no consideration,[9] was within their power and authority
under G. L. c. 201A, § 4 (*f*), to "sell, exchange, convert or
otherwise dispose of custodial property." [10] He contends further
that the only limitations on the authority of a custodian to
relinquish rights of a minor are the statute's prohibition on
outright revocation of the gift by the donor [11] and its provision

the interest of the minor beneficiary, whether during or beyond the beneficiary's
minority, we need not decide the issue. See *Attorney General* v. *Olson*, 346
Mass. 190 (1963); Restatement (Second) Trusts §§ 171 & 193 (1959).

[9] Even if we were to assume the correctness of the legal argument implicit
therein, the stipulated facts do not support Nordblom's suggestion that the
custodians' assent was a reasonable exercise of discretion to cooperate with
him, when there existed the possibility that future gifts might be made to
the minors.

[10] Statute citations in the text are to G. L. c. 201A, as in effect in 1972.

[11] In pertinent part G. L. c. 201A, § 3, provides: "A gift made in a manner
prescribed in this chapter shall be irrevocable and shall convey to the minor
an indefeasible legal title to the security."

for liability for exercises of powers which would otherwise
constitute "intentional wrongdoing," "gross negligence" or
"bad faith." G. L. c. 201A, § 5 (*e*).[12]

We need not pursue various interesting and novel issues
such as whether a custodian's fiduciary obligations are deter-
mined solely by reference to the statute and whether the actions
at issue here are to be judged according to the statutory standard
in effect in 1972, or that imposed by the current G. L. c. 201A,
§ 12 (1986 ed.) (St. 1986, c. 321). Contrary to Nordblom's
assertions that intentional wrongdoing, gross negligence or bad
faith, as those terms are used in the statute, should be limited
to situations involving overt self-dealing, we conclude that,
on the stipulated facts, the custodians' consent to a seventy-five
percent reduction in the liquidation value of the preferred shares
is, at least, gross negligence. Their conduct, therefore, fell
below the standard of care set by G. L. c. 201A, § 5 (*e*). That
the custodians, in so doing, also reduced the value of their
own beneficial interest in preferred shares does not render their
actions a justifiable exercise of their discretion to manage cus-
todial property in a manner they may "deem[] advisable."
G. L. c. 201A, § 4 (*f*). Implicit in the statutory grant of
discretion must be the requirements that the custodian exercise
his or her discretion, and that he or she evaluate advisability
in terms of the interests of the minor beneficiary. The record
is devoid of facts permitting any inference that the custodians
did either. Rather, the custodians' assent to the 1972 amend-
ment appears to constitute nothing more than the relinquishment
of valuable rights for the sole benefit of the common share-
holder and donor of an irrevocable gift. See *Clune* v. *Norton*,

---

[12] We note that the Massachusetts Uniform Transfers to Minors Act, G. L.
c. 201A (St. 1986, c. 362, § 1) significantly modifies c. 201A with respect
to a custodian's obligations in managing custodial property and the statutory
standard of care. G. L. c. 201A, § 12. Moreover, the statute provides:
"This chapter applies to all transfers made before it became the Uniform
Transfers to Minors Act in a manner and form prescribed in the Massachu-
setts Uniform Gifts to Minors Act except insofar as the application impairs
constitutionally vested rights or extends the duration of custodianships in
existence on the effective date of this chapter. G. L. c. 201A, § 22 (1986 ed.).

306 Mass. 324, 327 (1940); 3 A. Scott, Trusts § 190.10 (3d ed. 1967).

Because the custodians' approval, on behalf of the minor beneficiaries, was outside even their broad powers under G. L. c. 201A, § 4 (*f*), we conclude also that the 1972 amendment is invalid since it was not approved by two-thirds of the preferred shareholders, as required by the 1969 amendment. We are not persuaded by Nordblom's argument that a declaration of invalidity is not the proper remedy for a breach of duty by the custodians. He contends that c. 201A limits the grandchildren's remedy to monetary relief from the custodians and that the setting aside of a transaction such as the 1972 amendment is inconsistent with the terms and policies of the statute. As support for these contentions, Nordblom cites G. L. c. 201A, § 6, that portion of the statute which insulates third parties from some of the risks when they deal with property owned by a minor, and related commentary. Newman, The Uniform Gift to Minors Act in New York and Other Jurisdictions, 49 Cornell L.Q. 12, 30-32 (1963). Note, Recent Legislation to Facilitate Gifts of Securities to Minors, 69 Harv. L. Rev. 1476, 1477-1478, 1481 (1956).

The protection afforded to third parties by G. L. c. 201A, § 6, simply does not apply to the BRT trustees in this case. Among the BRT trustees were Rodger Nordblom, who was also a custodian, and Nordblom, the donor of the shares to be held by the custodians. The two custodians, Rodger P. Nordblom and June N. Robinson, were also voting trust trustees. These overlapping relationships establish their notice or knowledge of the custodians' fiduciary obligations with regard to their assent to the 1972 amendment. Cf. *Metro Trust Co. v. Northwestern Sav. & Loan Ass'n*, 654 S.W.2d 631 (Mo. App. 1983).

In sum, we conclude that, where the 1972 amendment was adopted on the basis of consent which the custodians were without authority to give, it is void and of no effect. *Abbott v. John Hancock Mut. Life Ins. Co.*, 18 Mass. App. Ct. 508 (1984). Therefore, the 1957 trust document, as amended by the 1969 amendment, governs the rights and privileges attaching

to the common and preferred shares, including voting rights and requirements relating to shareholder rights and privileges.[13] We remand the case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[13] We are not unmindful of Nordblom's contention that it would be inequitable to void entirely the 1972 amendment because, if governed by the 1969 amendment, the 3,400 preferred shares, given in reliance on the validity of the 1972 amendment, would greatly increase in value. We simply note that our resolution of this case does not preclude Nordblom from challenging the validity or effectiveness of the gifts of preferred stock made after the purported 1972 amendment on legal or equitable grounds. Similarly, in view of our resolution of the reported matters, we leave arguments concerning the liability of the various trustees and appropriate remedies for resolution in the Superior Court.