Theodore Alexander BUDER, Petitioner,

v.

Pamela Morrow SARTORE, as Mother, Legal Custodian, Natural Guardian, and Next Friend of Theodore Alexander Buder, Jr., and Cori Marie Buder, Respondent.

No. 88SC226.

Supreme Court of Colorado,
En Banc.

June 19, 1989.

Hall & Evans, Eugene O. Daniels, Alan Epstein, Denver, for petitioner.

Hoyt, Graveley & Thorpe, Wesley W. Hoyt, Englewood, for respondent.

ERICKSON, Justice.

This case arose out of an action brought by respondent on behalf of Theodore Alex- ander Buder, Jr. and Cori Marie Buder, the then minor children of respondent and peti tioner, alleging that petitioner breached the fiduciary duty he owed to his children by failing to prudently invest certain of their funds. Following a bench trial, the court found that petitioner had breached his fidu- ciary duty and assessed damages and attor- ney fees. The court of appeals affirmed the judgment and award of attorney fees, and in addition awarded respondent attor- ney fees incurred on appeal. *Sartore v. Buder*, 759 P.2d 785 (Colo.App.1988). We granted certiorari to determine whether the court of appeals, in affirming the trial court, applied the appropriate standard of care when reviewing the petitioner's invest- ment activities and whether damages and attorney fees could be imposed against pe- titioner. We affirm.

## I.

Between 1972 and 1984, the father of petitioner Theodore Alexander Buder made substantial cash gifts to the two minor children of Buder and his then wife, re- spondent Pamela Sartore.[1] The cash gifts, typically in the form of checks made direct- ly payable to the children, were given to Buder with the tacit understanding that he was to safeguard the money and invest it on behalf of the children. Buder would then deposit the funds in bank accounts marked either "Theodore A. Buder, in Trust for Theodore A. Buder, Jr." or "Theodore A. Buder, in Trust for Cori Ma- rie Buder."

From 1972 until the date of trial Buder invested various amounts of the children's money in "blue chip" stocks traded over the New York or American Stock ex- change. In 1974, Buder also began invest- ing substantial sums of the children's funds in penny stocks. When the stocks were acquired they were purchased in Bu- der's name as custodian for the children under the Uniform Gifts to Minors Act

---

1. According to Buder's trial testimony, the chil- dren received a total of $86,450 from their grandfather between 1972 and 1984.

(UGMA).[2] At one point, almost half of the children's capital was invested in penny stocks.[3] While the "blue chip" stocks sustained gains and losses reflecting general economic trends, all of the penny stocks, except one, suffered substantial losses.

On April 16, 1984, Sartore sued Buder in the Arapahoe County District Court claiming that Buder had breached his fiduciary duty to their children under the UGMA. Specifically, Sartore alleged that Buder breached his duty by failing to invest the children's funds as a prudent person would, failing to provide an accounting, converting the funds to his own use, and commingling his funds with those of his children. Buder continued to invest the funds entrusted to him as a custodian after the complaint was filed in this case. After a bench trial, the court found that Buder had breached his fiduciary duty as custodian of the children's funds under the UGMA.

The trial court reviewed three statutes which set out the prudent-person rule and defined a custodian's duty of care in investing for a minor. § 11–50–105(5), 4 C.R.S. (1973); § 11–50–113(2), 4B C.R.S. (1987); § 15–1–304, 6 C.R.S. (1973). These three statutes contain what is commonly referred to as the prudent-person rule. Under the first statute cited by the court, the UGMA, the prudent-person rule states that "[t]he custodian, notwithstanding statutes restricting investments by fiduciaries, shall invest and reinvest the custodial property as would a prudent man of discretion and intelligence who is seeking a reasonable income and the *preservation of his capital.*" § 11–50–105(5), 4 C.R.S. (1973) (emphasis added). This prudent-investor rule was superseded when the legislature repealed and reenacted the UGMA. Ch. 74,

sec. 1, § 11–50–113(2), 1984 Colo.Sess.Laws 383, 388–89. The statute as reenacted, was entitled the Uniform Transfers to Minors Act (UTMA),[4] and now provides that "[i]n dealing with custodial property, a custodian shall observe the standard of care that would be observed by a prudent person dealing with *property of another* and is not limited by any other statute restricting investments by fiduciaries." § 11–50–113(2), 4B C.R.S. (1987) (emphasis added).

The court then looked to the general prudent-person rule governing fiduciaries. Under section 15–1–304, 6 C.R.S. (1973),

[i]n acquiring ... property for the benefit of others, fiduciaries shall ... exercise the judgment and care under the circumstances then prevailing, which men of prudence, discretion, and intelligence exercise *in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital.*

(Emphasis added.)[5] Addressing the interrelationship of the three prudent-person rules, the court concluded that the "fiduciary duty owed by a trustee under General Trust Law [section 15–1–304], and a custodian under the Uniform Gifts to Minors Act are the same."

The trial court rejected Buder's argument that since he invested his own funds in the same penny stocks as he invested the children's funds, he was not accountable for the loss of the children's money. In essence, Buder argued that the UGMA created a subjective standard whereby his conduct as a custodian would be appropriate so

**2.** Sections 11–50–101 to 11–50–112, 4 C.R.S. (1973). Petitioner does not dispute the trial court's finding that the "gifts were given with the intention that the UGMA applied to [them]."

**3.** According to the court of appeals, 48.6 percent of the children's capital was invested in penny stocks while the remaining 51.4 percent was in "blue chip" stocks. *Sartore v. Buder,* 759 P.2d 785, 786.

**4.** Sections 11–50–101 to 11–50–126, 4B C.R.S. (1987).

**5.** Section 15–1–304, 6 C.R.S. (1973), was amended in 1975 to change the standard which a fiduciary was held to from that of a prudent person investing his own funds to that of a prudent person investing another's property. *See* section 15–1–304, 6B C.R.S. (1987). Thus, the standard governing fiduciaries, like the standard governing custodians, had been heightened by the legislature.

long as he invested his personal capital identically to that of the children's. The court pointed out that under *Rippey v. Denver U.S. Nat'l Bank*, 273 F.Supp. 718 (D.Colo.1967),

> the "reasonable prudence" standard applies to protecting and caring for the property and does not permit one to *prudently speculate....* The trustee may not subject his trust property to hazards which a man dealing with his own property might consider warranted if to do so would create danger to the trust estate.

*Id.* at 735 (emphasis added). Based upon this passage from *Rippey*, the court held that Buder was required as custodian to invest in a manner reasonably calculated to safeguard and preserve the children's funds. Because the court found that Buder knew penny stocks were not safe investments which would preserve the children's funds, the trial court concluded that he had "breached the Prudent Man Standard as it relates to a custodian's duty to the preservation of capital under U.G.M.A., and thus breached his fiduciary duty to the beneficiaries and is liable in damages therefor."

The court substituted Sartore for Buder as custodian and ordered Buder to account for the children's funds. The court ordered that all penny stocks purchased by Buder on the children's behalf be transferred to him and, in return, that he pay $32,506.27 to Cori and $32,596.27 to Alex, those amounts representing the amount of the gifts from Buder's father to the children that Buder invested in penny stocks. An additional $7,493.21 to Cori and $7,532.99 to Alex was awarded, representing damages for the loss of appreciation of the funds invested in the penny stocks. The court also awarded damages against Buder for interest in the amount of $337.02 to Cori and $281.41 to Alex on the money he borrowed from the children. Sartore was also granted attorney fees. The court did not, however, hold Buder liable for any of the losses sustained by the "blue chip" stocks.

Buder appealed, alleging that the trial court applied an improper custodial standard of care when it reviewed the investments he made on behalf of his children. Buder also claimed that the trial court awarded damages and attorney fees not authorized by statute. The court of appeals rejected Buder's allegations and affirmed the trial court in all respects. Rejecting Buder's arguments, the court of appeals stated that the trial court applied the standard of care set forth in section 11–50–105(5) of the UGMA, which required a custodian to invest as a prudent man would invest his own money. The court of appeals went on to state:

> This standard of care was similar to the standard owed by a trustee under the general trust law before July 1, 1975. *See* § 15–1–304, C.R.S. Both standards focused on the element of how a prudent man would invest his own capital or account.
>
> The trial court appropriately did not apply the higher standard of care for a trustee as alleged by defendant. The higher standard went into effect after July 1, 1975, as set out in § 15–1–304, C.R.S. (1987 Repl. Vol. 6). Nor did the court apply the newer standard for a custodian enacted in 1984 under § 11–50–113, C.R.S. (1987 Repl. Vol. 4B), of the U.T.M.A. The higher standard set forth in the amendments requires the custodian to act as a prudent person to deal with greater care for the property of another than for his own. However, both the statutes, on the issue of standard of care, paralleled each other prior to the July 1, 1975 changes in the general trust law.
>
> We conclude that in this case the fiduciary duty owed by a trustee under general trust law, and a custodian under the Act are the same. *See* Restatement (Second) of Trusts § 227(a) comment f(1) and (2) (1959). That section states that a trustee may not purchase for the purpose of speculation nor purchase new and untried securities. The evidence reflects and the trial court found that penny stocks were highly speculative. Thus, defendant had no authority to invest in penny stocks. Such investments violated the reasonable prudence standard for the protection and care of the children's

property. *Rippey v. U.S. National Bank,* 273 F.Supp. 718 (D.Colo.1967). *Sartore v. Buder,* 759 P.2d 785, 787 (Colo. App.1988).

Accordingly, although we apply a different analysis, we conclude that the court of appeals reached the right result by affirming the trial court's judgment and by awarding Sartore attorney fees incurred on appeal.

## II.

Buder asserts that the trial court applied an improper standard of care in reviewing his investment activity. Consequently, we must determine the proper standard of care by which Buder's actions must be measured and whether the trial court applied the proper standard. In our view, the trial court applied an appropriate standard to Buder's actions when it applied the UGMA. However, because we disagree with the trial court's conclusion that the duty owed by a trustee under the general trust law is identical to the duty owed under the UGMA and because of the complex interrelationship between the UGMA/UTMA and the law governing other fiduciaries, we find it necessary to delineate in some detail the proper relationship among the different statutes.[6]

We agree with the trial court that a custodian's duty to preserve capital under both the UGMA and the UTMA and a trustee's duty as a prudent person to consider probable income as well as probable safety of capital under the general trust law are similar. However, we cannot conclude that the prudent-person rule is the same under the three statutes involved in this case. A broad reading of the UGMA, UTMA, and section 15–1–304, 6 C.R.S. (1973), justifies the conclusion that preservation of capital is paramount and that speculation is not to be tolerated. It does not, however, justify the trial court's and court of appeals conclusion that Buder's fiduciary duty was the same under the general trust law and the UGMA. The duties were not the same. However, as will be shown later, the error was harmless and does not change the result.

■ The UGMA/UTMA exhibits a comprehensive legislative scheme specifically enacted to regulate the method in which property may be transferred to minors and to delineate the duties of those holding the transferred property on the minor's behalf. The overriding goal of the UGMA/UTMA is to preserve the property of the minor. To further this goal, the UGMA/UTMA contain standards of care which, in our view, are tailored exclusively for custodians. We reach this conclusion based, in part, upon a reading of the statutes' plain language. That portion of the UGMA which provides the applicable standard of care for custodians clearly states that *"[t]he custodian,* notwithstanding statutes restricting investments by fiduciaries," shall invest the custodial property as he would his own property. § 11–50–105(5), 4 C.R.S. (1973) (emphasis added). The UTMA contains a like provision, stating that *"a custodian . . .* is not limited by any other statute restricting investments by fiduciaries." § 11–50–113(2) (emphasis added). Conversely, the standard of care which other fiduciaries are held to excludes custodians from its ambit. The fiduciaries, who are subject to the standard of care contained in section 15–1–304, are defined to include "original or successor administrators, special administrators, administrators cum testamento annexo, executors, guardians, conservators, and trustees, whether of express or implied trust." § 15–1–301, 6 C.R.S. (1973 & 1987). Conspicuous by its absence from the list of fiduciaries subject to section 15–1–304 is a custodian. Thus, under the express language of section 15–1–301, a custodian is not denominated a fiduciary for purposes of the standard of care found in section

---

**6.** The uncertainty of the law concerning the duty owed by a custodian, trustee, or fiduciary when investing funds has caused the American Law Institute to submit a draft of a proposed Restatement (Third) of Trusts section addressing the standard of care owed when managing the funds of another and is tentatively entitled "General Standard of Prudent Investment." *See* Restatement (Third) of Trusts (Prudent Investor Rule) § 227 (Tent. Draft No. 1 1988).

15-1-304.[7] *See In re Marriage of Van Inwegan,* 757 P.2d 1118 (Colo.App.1988) (when statute specifies particular instances in which it applies, it is generally to be construed as excluding all other situations not specified); *Meyer v. Charnes,* 705 P.2d 979 (Colo.App.1985) (same). Nor, in view of the specificity of the UGMA and UTMA, do fiduciaries who are not custodians fall within the scope of sections 11–50–105(5) and 11–50–113(2).

Our holding that the standard of care contained in section 15–1–304 does not apply to custodians also reconciles the latent conflict between section 15–1–304 and sections 11–50–105(5) and 11–50–113(2). Before July 1, 1984, a custodian was required under the UGMA to invest custodial property as a prudent person of discretion would invest his own property. § 11–50–105(5). As of July 1, 1984, the UTMA heightened the standard so that a custodian was required to invest custodial property in the same manner as a prudent person would invest the property of another. § 11–50–113(2). Likewise, prior to July 16, 1975, fiduciaries were required to exercise that degree of care which a prudent person exercises in the management of his own affairs. § 15–1–304, 6 C.R.S. (1973). As of July 16, 1975, a higher duty was imposed to require fiduciaries to invest as a prudent person would invest the property of another. § 15–1–304, 6B C.R.S. (1987). Therefore, between July 16, 1975, and July 1, 1984, there was a conflict between the standard a custodian and a fiduciary were held to. The former was required to invest as a prudent person would invest his own property, while the latter was required to invest as a prudent person would invest another's property. Accordingly, we must interpret the conflicting standards so as to harmonize them if possible. *See Mooney v. Kuiper,* 194 Colo. 477, 573 P.2d 538 (1978).

We do so by recognizing that the statutes contain different standards and that the standards contained in the UGMA/UTMA apply exclusively to custodians, while the standard contained in section 15–1–304 applies to other fiduciaries. By so holding, we give effect to both standards. Moreover, we effectuate the plain language of section 15–1–304, which excludes custodians from those who are fiduciaries under the statute, and acknowledge the fact that the UGMA/UTMA provides a sufficient and independent standard of care to govern a custodian's actions.

■ Given this interpretation, Buder's investment activities before July 1, 1984, should be analyzed under the standard contained in section 11–50–105(5), 4 C.R.S. (1973) of the UGMA, while his investment activities on or after July 1, 1984, should be reviewed under the standard contained in section 11–50–113(2), 4B C.R.S. (1987) of the UTMA. The trial court analyzed all of Buder's activities, including the investments that occurred subsequent to July 1, 1984, under the UGMA. In our view this is, at worst, harmless error. *See Bigler v. Richards,* 151 Colo. 325, 377 P.2d 552 (1963). The court found that Buder's post-July 1, 1984 activities violated the UGMA standard of care. Since Buder breached his duties under the UGMA, he necessarily breached, as a matter of law, the stricter duty imposed by the UTMA. The trial court undoubtedly would have found that Buder's actions violated the higher standard of care found in the UTMA had it applied the UTMA standard of care and not that specified in the UGMA. Accordingly, the error asserted by Buder is harmless. *See Bigler v. Richards,* 151 Colo. 325, 377 P.2d 552.

### III.

### A.

The next issue raised is whether the trial court had authority to assess damages

---

**7.** We do not imply that a custodian is not a fiduciary. To the contrary, the law is well-established that a custodian is a fiduciary. *See Enstar Corp. v. Senouf,* 535 A.2d 1351 (Del.Super.1987); *Pearlstein v. Maryland Deposit Ins. Fund,* 78 Md.App. 8, 552 A.2d 51 (1989); *Fogelin*

*v. Nordblom,* 402 Mass. 218, 521 N.E.2d 1007 (1988). Our statement here is limited only to the assertion that a custodian's duty of care is found in sections 11–50–105(5) and 11–50–113(2), not section 15–1–304.

against Buder. Buder argues that "[n]othing in the Uniform Gifts to Minors Act or the Uniform Transfer to Minors Act allows for damages to be assessed against a custodian in the manner set forth in the court's order." Section 11–50–106(5), 4 C.R.S. (1973), of the UGMA, which was in force when most of Buder's investment activity occurred, governed the liability of a custodian and provided that:

> A custodian not compensated for his services[8] is not liable for losses to the custodial property unless they result from his bad faith, intentional wrongdoing, gross negligence, *or failure to maintain the standard of prudence in investing the custodial property provided in this article.*

(Emphasis added.)

It is evident that section 11–50–106(5) of the UGMA contains a broad grant of authority allowing the court to impose liability upon an uncompensated custodian if the custodian failed to act in accordance with the prudent-person standard. When assessing damages pursuant to section 11–50–106(5), which clearly relates to the liability of custodians, the prudent-person rule found to have been violated must be that rule applicable to custodians; namely, the standard found in section 11–50–105(5), 4 C.R.S. (1973). Because the trial court applied the prudent-person rule found in the UGMA, its finding that Buder violated the prudent-person standard provided a basis for purposes of imposing section 11–50–106(5) liability. Accordingly, we conclude that the trial court had authority to assess damages for losses of custodial property under section 11–50–106(5).

### B.

Buder also claims that nothing in the UTMA "requires that a custodian reimburse the minors by purchasing from the custodial property stocks which have depreciated and reimburse for loss of appreciation." Because the question of whether the UTMA authorizes an award of damages under the circumstances of this case has never been addressed in Colorado, we will elaborate the principles applicable to the resolution of the issue in some detail.

When the UGMA was repealed and reenacted in 1984 as the UTMA, the clause relating to the assessment of damages for failing to maintain the standard of prudence previously found in section 11–50–106(5) was deleted. In its place was substituted section 11–50–120, 4B C.R.S. (1987), which contains the current provisions governing a custodian's liability. Section 11–50–120 provides in part:

> (1) A minor who has attained the age of fourteen years, the minor's guardian or legal representative, an adult member of the minor's family, a transferor, or a transferor's legal representative may petition the court:
>
>> (a) For an accounting by the custodian or the custodian's legal representative;
>>
>> (b) For a determination of responsibility, as between the custodial property and the custodian personally, for claims against the custodial property unless the responsibility has been adjudicated in an action under section 11–50–118 to which the minor or the minor's legal representative was a party....

In making his argument that section 11–50–120 did not grant the trial court the authority to impose the remedies it did, Buder cites only to section 11–50–120(1)(b), ignoring section 11–50–120(1)(a). In our view, section 11–50–120(1)(a) contains an implied grant of authority which permits a trial court to impose a wide variety of remedies.

Section 11–50–120(1)(a) authorizes the court to order a custodian to account for funds held on behalf of the minor. We construe this section as not only allowing the trial court to require a custodian to provide a statement of the account, but also as enabling the court to render a judgment should the statement indicate that the account had been improperly maintained. *See In re Leasing Consultants, Inc.,* 592 F.2d 103 (2d Cir.1979); *Weltscheff v. Medi-*

---

**8.** It is undisputed that Buder was not compensated for his services.

*cal Center of Independence, Inc.,* 604 S.W.2d 796 (Mo.App.1980); *Larry C. Iverson, Inc. v. Bouma,* 195 Mont. 351, 639 P.2d 47 (1981). The function of an accounting is to determine whether the custodian has properly maintained the account and, if not, to adjust the current account to reflect what is proper. *First Commodity Traders, Inc. v. Heinold Commodities, Inc.,* 766 F.2d 1007 (7th Cir.1985). When adjusting an account, the trial court is given broad discretion in fashioning an appropriate remedy. We will not disturb the trial court's accounting unless it is a clear abuse of discretion. *Burgess Mining & Const. Corp. v. Lees,* 440 So.2d 321 (Ala.1983); *Ferrara v. Collins,* 119 Ill.App.3d 819, 75 Ill.Dec. 319, 457 N.E.2d 109 (1983); *Kreamer v. College of Osteopathic Medicine & Surgery,* 301 N.W.2d 698 (Iowa 1981).

■ In the present case, we conclude that the remedy imposed by the trial court was appropriate and well within its discretion. It is a fundamental principle of fiduciary law that a trustee is individually liable for losses incurred by the trust property if his misfeasance caused the losses. As well-stated by one commentator:

> Where the trustee's breach has been the making of an investment that is unauthorized, in whole or in part, and a loss resulted from the breach, the trustee may be compelled to restore the amount paid for the investment even though the loss may not have been entirely due to the trustee's breach, for example in the case of a general market decline. Bogert, *The Law of Trusts and Trustees* § 701 at 205 (2d ed. rev. 1982).

In our view, this passage is as applicable to custodians as it is to trustees.

■ The court's order requiring Buder to reimburse the children and, in return, transferring the penny stocks to Buder is certainly equitable and perhaps generous. While the children were given the full amount of their grandfather's gifts, thus putting them in the position they would have enjoyed had Buder not inappropriately invested their funds, Buder was given the penny stocks, putting him in a position he would not have enjoyed had he not been

custodian. Similarly, the trial court's order that Buder pay $7,493.21 to Cori and $7,542.99 to Alex for loss of appreciation of the funds represents a realistic recognition of the opportunity costs associated with investing. *See* Restatement (Second) of Trusts § 205 comment i (1959). Finally, the court's order that Buder pay interest on the money he borrowed from the children is appropriate. *See Heller v. First Nat'l Bank,* 657 P.2d 992 (Colo.1982); Restatement (Second) of Trusts § 207 comment c (1959).

Accordingly, the trial court's assessment of damages was proper.

## IV.

■ The final issue raised by Buder is that neither the UGMA nor UTMA contains any provision authorizing the trial court to assess attorney fees. The general rule is that absent a specific contractual, statutory, or procedural rule providing otherwise, attorney fees are generally not recoverable. *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *Cement Asbestos Products Co. v. Hartford Accident & Indem. Co.,* 592 F.2d 1144, 1148 (10th Cir.1979); *Beebe v. Pierce,* 185 Colo. 34, 521 P.2d 1263 (1974). The court of appeals created an exception to this rule in *Heller v. First Nat'l Bank,* 657 P.2d 992 (Colo.App.1982), when it held that attorney fees may be assessed in a breach of trust action. *Id.* at 999.

■ Based upon *Heller,* the court of appeals in this case reasoned that the same exception applied in an action against a custodian for breach of fiduciary duty. In addition, the court of appeals held that "since plaintiff here was directly granted attorney fees by the trial court under the *Heller* doctrine, on the issues appealed by defendant, plaintiff is entitled to reasonable attorney fees on appeal." *Sartore v. Buder,* 759 P.2d at 788. The court then remanded the case to the trial court for a determination of reasonable attorney fees for the appeal. The total amount of attor-

ney fees eventually awarded to Sartore on behalf of the children was $14,922.65.

In our view, the assessment of attorney fees by the trial court and the court of appeals was proper. The rationale underlying *Heller*, that the object of an award of attorney fees in a breach of trust action is to make the injured party whole again, is, in our view, equally applicable in an action against a custodian for breach of fiduciary duty. The fundamental purpose of performing an accounting in this case, that of making the children whole by returning them to the position they would have enjoyed had Buder not imprudently invested their funds, would be frustrated by requiring them to pay attorney fees out of their funds. We therefore hold that the trial court's and the court of appeals imposition of reasonable attorney fees is warranted. *See Heller*, 657 P.2d 992; *Hartman v. Freedman*, 197 Colo. 275, 591 P.2d 1318 (1979).

### V.

Accordingly, we affirm.