2009 UT App 148

**KEALAMAKIA, INC., Plaintiff, Appellee, and Cross appellant,**

v.

**Nadine KEALAMAKIA, Joseph Kealama-kia, and William Kealamakia, Defen-dants, Appellants, and Cross appellees.**

No. 20070922–CA.

Court of Appeals of Utah.

June 4, 2009.

Matthew T. Graff and Jason V. Robb, Cedar City, for Appellants and Cross-appellees.

Mark A. Larsen, Stacy J. McNeill, and Brent R. Armstrong, Salt Lake City, for Appellee and Cross-appellant.

Before Judges BENCH, ORME, and DAVIS.

## OPINION

DAVIS, Judge:

¶ 1 Defendants Nadine Kealamakia and Joseph Kealamakia appeal the trial court's judgment in favor of Plaintiff Kealamakia, Inc. Defendants argue that the trial court erred by awarding attorney fees, by not determining whether the attorney fees awarded were reasonable, by allowing a double recovery of prejudgment interest, and by failing to appoint a disinterested third-party to calculate the prejudgment interest. Plaintiff cross-appeals, contending that its contingency fee agreement with its attorneys should not be the maximum amount it may receive as an attorney fee award. We affirm and remand for a modification of the attorney fee award due to the appeal.

## BACKGROUND

¶ 2 In 2003, Plaintiff sued Nadine Kealamakia and her husband, William, who were officers and directors of Kealamakia, Inc., for breach of fiduciary duty and conversion of corporate assets. Plaintiff also sued their son, Joseph Kealamakia, for, among other things, conversion and unjust enrichment. After extensive litigation, the trial court entered its decision. The trial court determined that William and Nadine Kealamakia were liable for actual damages in the amount of $196,047.01 and for punitive damages of $35,000.00, as well as for attorney fees and prejudgment interest. The trial court determined Joseph Kealamakia was liable in the amount of $36,403.10, plus prejudgment interest. A subsequent order set the amounts of the attorney fees and prejudgment interest, providing that (1) the contingency fee agreement amount of 40% was the maximum amount that Plaintiff could recover in an attorney fee award, (2) the 40% figure— $134,743.44—was a reasonable attorney fee under the circumstances, (3) William and Nadine Kealamakia owed $94,811.58 in prejudgment interest, and (4) Joseph Kealamakia owed $13,896.34 in prejudgment interest. Both Plaintiff and Defendants appeal this

ruling regarding the amounts of attorney fees and prejudgment interest awarded.

ISSUES AND STANDARDS OF REVIEW

■ ¶ 3 Defendants argue that the trial court should not have awarded Plaintiff its attorney fees and that the fees awarded were not supported by an appropriate finding of reasonableness. Plaintiff argues that the trial court erred by using the contingency fee as a cap on the amount of its attorney fee award and should have, instead, simply evaluated the factors for determining a reasonable attorney fee. "[W]hether attorney fees are recoverable in an action is a question of law, which we review for correctness. However, the district court has broad discretion in determining what constitutes a reasonable fee, and we will consider that determination against an abuse-of-discretion standard." *Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 12, 1 P.3d 1095 (citation and internal quotation marks omitted).

■ ¶ 4 Defendants also contest the trial court's award of prejudgment interest, arguing that (1) the award allows Plaintiff a double recovery of interest, (2) any prejudgment interest rate applied to the judgment against Joseph Kealamakia should have been at the certificate of deposit rate and not at the statutory rate, and (3) the trial court should have appointed a disinterested third-party to make the prejudgment interest calculations. "The trial court's award of prejudgment interest, and the amount thereof, present[ ] a question of law which we review for correctness." *Trail Mountain Coal Co. v. Utah Div. of State Lands & Forestry*, 884 P.2d 1265, 1271–72 (Utah Ct.App.1994) (alteration in original) (internal quotation marks omitted), *aff'd in part and rev'd in part*, 921 P.2d 1365 (Utah 1996).

ANALYSIS

I. Attorney Fees

A. Separate Award of Attorney Fees

■ ¶ 5 Defendants initially assert that it was improper for the trial court to make an award of attorney fees because the contingency fee agreement Plaintiff has with its attorneys provides that the fee is to come out of the "total gross recovery." Defendants argue that a separate attorney fee award rewrites the contract between Plaintiff and its attorneys. We disagree.

¶ 6 First, we note that Defendants' characterization of the language of the contingency fee agreement is incorrect. The agreement simply provides that Plaintiff must compensate its attorneys by paying them "40% of gross amounts recovered." There is no language that would require that amount to be paid from recovery as opposed to being paid from a separate award of attorney fees. Indeed, the agreement contemplates the possibility that such a separate award may be granted where it states, "In no event will you compensate us less than the amount of any attorney[ ] fees awarded by the Court."

■■ ¶ 7 Second, requiring Defendants to pay Plaintiff's attorney fees is entirely appropriate under the facts of this case. " 'The general rule in Utah, and ... the traditional American rule, subject to certain exceptions, is that attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes such an award.' " *Campbell v. State Farm Mut. Auto. Ins. Co.*, 2001 UT 89, ¶ 119, 65 P.3d 1134 (quoting *Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759, 782 (Utah 1994)), *rev'd on other grounds*, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). But "breach of a fiduciary obligation is a well-established exception to the American rule precluding attorney fees in tort cases generally." *Id.* ¶ 122.

¶ 8 Third, although it is a correct statement of law that courts cannot rewrite unambiguous contracts between litigating parties, *see Rio Algom Corp. v. Jimco, Ltd.*, 618 P.2d 497, 505 (Utah 1980) ("A court will not ... make a better contract for the parties than they have made for themselves."), this is not the situation before us. The trial court's award of attorney fees to Plaintiff does not alter the contract between Plaintiff and its attorneys in any way. Rather, Plaintiff remains obligated to pay its attorneys according to the terms of the contingency fee agreement. The fact that the money will come in the form of a separate award, allowing Plaintiff to be made whole, does not

change any rights or obligations provided for in the contract.

## B. Finding of Reasonableness

¶ 9 Defendants next assert that the attorney fee award was not supported by the evidence because the trial court simply used the contingency fee agreement to determine the amount and did not make a specific finding of reasonableness. We do not agree that the trial court simply used the contingency fee agreement without evaluating the reasonableness for that amount. Rather, the trial court stated, "Having concluded that Plaintiff may not recover more attorney fees from Defendants than Plaintiff will be required to pay under its contingent-fee contract, the Court must now determine the amount Plaintiff will be required to pay." [1] The trial court then made a specific finding that the fee amount was reasonable "particularly considering ... Plaintiff's claims that were not successful and the amount ultimately awarded."

¶ 10 Defendants also argue that the trial court failed to address the questions required for a reasonableness determination:

1. What legal work was actually performed?

2. How much of the work performed was reasonably necessary to adequately prosecute the matter?

3. Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services?

4. Are there circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility?

*Dixie State Bank v. Bracken,* 764 P.2d 985, 990 (Utah 1988) (footnotes omitted). The trial court had before it the information to answer these questions in the form of affidavits illustrating the services provided by Plaintiff's attorneys. Moreover, the trial court had additional information in the form of Defendants' filings in opposition to those requested fees. Further, we see no legal authority, and Defendants do not point to any, requiring the trial court to make specific findings in response to those individual questions in order for a reasonableness determination to be supported. *Cf. id.* at 990–91 ("The trial court, in our view, found the $4,847.50 fee requested by the bank's counsel to be 'fair and reasonable' in the circumstances. We agree with this determination, which is adequately supported in the record, and accordingly find no abuse of discretion in that regard."). And to the extent that Defendants argue that the trial court's determination of reasonableness was not supported by the evidence, they have wholly failed to properly marshal the facts supporting a finding of reasonableness; thus, we decline to address this argument further. *See West Valley City v. Majestic Inv. Co.,* 818 P.2d 1311, 1313 (Utah Ct.App.1991) ("The challenging party must marshal *all* relevant evidence presented at trial which tends to support the findings and demonstrate why the findings are clearly erroneous. We have shown no reluctance to affirm when the appellant fails to adequately marshal the evidence." (citation omitted)).

## C. Contingency Amount as a Cap on Attorney Fees

¶ 11 Plaintiff argues in its cross-appeal that its award of attorney fees should have been for a reasonable attorney fee as supported by the affidavits of its attorneys and should not have been limited by the amount of attorney fees that it was obligated to pay under the contingency fee agreement. We are not persuaded by Plaintiff's argument. We see no case law, and Plaintiff points to none, that would support awarding

---

1. There is some discussion by the parties of the foreseeability requirement set forth in *Campbell v. State Farm Mutual Automobile Insurance Co.,* 2001 UT 89, ¶ 120, 65 P.3d 1134, *rev'd on other grounds,* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). But *Campbell* involves a third-party insurance claim and, thus, the foreseeability requirement set forth therein is less than helpful under the facts here. *See id.* ¶ 121

("Although the foreseeability of damages test is generally limited to the contractual realm, we note that its use to determine damages in the context of tortious third-party, bad faith claims is justified since such 'claims arise only because of the contractual relationship of the parties.'" (quoting *Savage v. Educators Ins. Co.,* 908 P.2d 862, 866 (Utah 1995))).

attorney fees for an amount more than the amount a party has negotiated to pay its attorney.[2] Because the party ultimately paying the attorney fee award is not a party to the contingency fee agreement, the agreement is not determinative when calculating the appropriate amount of an attorney fee award. *See Florida Patient's Comp. Fund v. Rowe*, 472 So.2d 1145, 1151 (Fla.1985) ("When the prevailing party's counsel is employed on a contingent fee basis, the trial court must consider a contingency risk factor when awarding a statutorily-directed reasonable attorney fee. However, because the party paying the fee has not participated in the fee arrangement between the prevailing party and that party's attorney, the arrangement must not control the fee award: 'Were the rule otherwise, courts would find themselves as instruments of enforcement, as against third parties, of excessive fee contracts.' Further, in no case should the court-awarded fee exceed the fee agreement reached by the attorney and his client." (citations omitted)). However, for much this same reason—that the party paying fees never had the opportunity to participate in the setting of fees while the party ultimately receiving payment did have the opportunity to negotiate an acceptable payment for its services—it is sensible to set the amount agreed upon as a cap on the attorney fee award. *Cf. Jones, Waldo, Holbrook & McDonough v. Dawson*, 923 P.2d 1366, 1375 (Utah 1996) ("[I]n the case of a paying client, the lawyer who wants to retain client satisfaction will have an incentive to limit the total fee. That incentive is not present in fee award cases." (internal quotation marks omitted)).

¶ 12 Further, we recognize "the public policy that the basic purpose of attorney fees is to indemnify the prevailing party and not to punish the losing party by allowing the winner a windfall profit." *Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 51, 1 P.3d 1095 (citing *Dawson*, 923 P.2d at 1375 (indicating attorney fee awards are means to "'vindicate personal claims'" rather than means to "'generate fees'")). Indeed, Plaintiff essentially agrees by stating that "[t]he purpose of an award of attorney fees for breaches of fiduciary duty is to make the wronged party whole." (Citing *Buder v. Sartore*, 774 P.2d 1383, 1391 (Colo.1989).) Plaintiff further states that, as a policy matter, deterrence of breaches of fiduciary duties is accomplished by "forcing fiduciaries to be responsible not only for the consequences of their breach but whatever reasonable fees and costs are necessary to recover from the breach." We do not see that limiting the attorney fee award to the amount Plaintiff is required to pay its attorneys fails to meet these purposes. Rather, such an award forces Defendants to pay for Plaintiff's costs in recovering from the breach of fiduciary duties, and as Plaintiff admits, such an award makes Plaintiff whole.[3]

¶ 13 Regarding the trial court's underlying findings, we do not agree with Plaintiff's characterization of the findings as awarding attorney fees for Defendants' "egregious" behavior. Although the trial court did use that term when discussing Defendants' behavior, it awarded a separate punitive damages amount as a result of such behavior. The trial court then went on to determine that Plaintiff was "entitled to an award of reasonable attorney fees against [Defendants] due to their breaches of fiduciary duty." There is no mention of egregious behavior in the discussion of the attorney fee award, nor are there any findings that Defendants increased

---

2. Admittedly, attorney fees can still be awarded in cases of pro bono or in-house representation. But our analysis would not be applicable to such cases because they involve no negotiated attorney fee amount between the parties, let alone any contingency fee provision.

3. We agree with the trial court that cases involving civil rights litigation are less than helpful in determining an appropriate fee here. *See Blanchard v. Bergeron*, 489 U.S. 87, 96, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) ("It should also be noted that we have not accepted the contention that fee awards in § 1983 damages cases should be modeled upon the contingent-fee arrangements used in personal injury litigation. '[W]e reject the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefitting only the individual plaintiffs whose rights were violated. Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms.'" (alteration in original)).

attorney fees by improper behavior during the litigation process. Therefore, the trial court's findings indicate that the attorney fee award was simply based on the fact that the claim involved breaches of fiduciary duty.

¶ 14 Thus, we determine that the trial court did not err in its determination of a reasonable attorney fee. However, the contingency fee agreement provides that the contingency fee shall be increased to 45% if an appeal is undertaken. We therefore remand to the trial court to modify its award of attorney fees, taking this new cap into consideration and still determining whether the 45% figure is a reasonable amount under the circumstances.

## II. Prejudgment Interest

¶ 15 Defendants also argue that it was error for the trial court to find Joseph Kealamakia liable for prejudgment interest because this result allows Plaintiff to recover twice for the same damages. However, the trial court acknowledged that the amount for which Joseph Kealamakia is liable is included in the amount for which William and Nadine Kealamakia are liable. And the trial court set forth specific provisions in order to avoid a double recovery of this amount and its accompanying prejudgement interest:

4. Any amount collected in partial or full satisfaction of the Judgment against Defendant Joseph Kealamakia shall be credited against the Judgment against Defendants William Kealamakia and Nadine Kealamakia

. . . .

5. If the amount collected from Defendants William Kealamakia and Nadine Kealamakia fully satisfies the Judgment against Defendants William Kealamakia and Nadine Kealamakia, before the Judgment against Joseph Kealamakia is fully satisfied, the unsatisfied portion of the Judgment against Defendant Joseph Kealamakia shall be deemed satisfied.... The intent of this paragraph is to prevent the Plaintiff from recovering the same damages from both (1) Defendants William Kealamakia and Nadine Kealamakia and (2) Defendant Joseph Kealamakia.

¶ 16 Alternatively, Defendants contest the trial court's application of different prejudgment interest rates to the two awards. Specifically, Defendants argue that it was unfair to charge Joseph Kealamakia's liability at a higher interest rate. But the trial court (1) correctly set forth the test for allowing prejudgment interest, stating, "[a]n award for prejudgment interest on this amount 'is proper if the loss is fixed at a definite time and the interest can be calculated with mathematical accuracy'" (quoting *Dejavue, Inc. v. U.S. Energy Corp.,* 993 P.2d 222, 228 (Utah Ct.App.1999)); (2) determined that the loss caused by Joseph Kealamakia's conversion meets this standard; and (3) awarded prejudgment interest "at the rate provided for in Utah Code [section] 15–1–4." And there was a specific reason for application of different amounts of interest: the award against Joseph Kealamakia was for conversion and unjust enrichment, while the award against William and Nadine Kealamakia was for conversion of corporate assets and breaches of fiduciary duties. We see no error in the trial court's differentiation.

¶ 17 Finally, Defendants argue that the trial court should have ordered a disinterested third-party to calculate the prejudgment interest. We do not see how having a disinterested third-party perform the mathematical calculations would have rendered a different result. Defendants are apparently suspicious of the amount of interest; however, Plaintiff's expert set forth the information stating precisely how the interest was calculated, and Defendants do not identify any evidence suggesting that those calculations were in error. As to the argument that when the judgment amount grew by $5000, the resulting interest grew by more than $5000, this is simply a result of the interest rate being compounded—and Defendants provide no argument that the certificate of deposit interest rate should not have been compounded. We therefore see no "suspicious" element to the mathematical calculations, and we accordingly affirm the trial court's award of prejudgment interest.

## CONCLUSION

¶ 18 We determine that the trial court correctly determined an appropriate award

of attorney fees. But to the extent that the maximum allowed for such fees has been altered by the participation in this appeal, we remand to the district court to recalculate the award. We also determine that there was no error in the trial court's award of prejudgment interest and affirm on this issue.

¶ 19 I CONCUR: RUSSELL W. BENCH, Judge.

ORME, Judge (concurring in part and concurring in the result in part):

¶ 20 I concur in the court's opinion, except that I concur only in the result reached in Section I(C). I believe the discussion there sweeps too broadly.

¶ 21 While not emphasized in the lead opinion, this case does not involve the familiar situation where a reasonable attorney fee is recoverable by the express terms of a statute or contract. On the contrary, the trial court awarded attorney fees without any basis in contract or statute, having determined that Defendants breached their fiduciary duties. In that unique posture, I have no problem with the trial court determining, in the exercise of its broad equitable powers and with case law support, that appropriate relief for Plaintiff would include an additional award of the amount its attorneys would otherwise be due under their contingent fee arrangement so that Plaintiff would be made completely whole. I see no abuse of the trial court's discretion in providing this relief to Plaintiff under the facts of this case.

¶ 22 That said, I see no need to comment more generally on whether a contractual contingent fee arrangement might be viewed as a cap on recoverable attorney fees in the more common situation where a party is *legally entitled* to a reasonable attorney fee by reason of a statute or a contract conferring that right. Our jurisprudence has mapped out a rather pristine formula for calculating such a fee, and I am not prepared to say, in the context of a case where fees are awarded on some other basis, that where a party is contractually or statutorily entitled to a reasonable fee, the contingent fee— calculable only after the entry of judgment— is somehow a cap on what qualifies as a reasonable fee.

¶ 23 Indeed, I have my doubts that such would be the case, and for two distinct reasons. First, if a contingent fee equates to the reasonable fee arrived at by employing the pristine formula referred to above, it will be a matter of pure coincidence. The very logic of contingent fee arrangements all but assures, in the context of an individual case, that the fee available to plaintiff's attorney will be unreasonable. An attorney with hundreds or thousands of hours invested in an unsuccessful case may receive absolutely nothing—a completely unreasonable (one might say absurd) result. Conversely, an attorney might reap millions for much less work when a lucrative case settles quickly and on favorable terms. It is a rather bizarre system, but the system exists not to satisfy the "riverboat gambler" predilections of some Bar members, but rather to provide legal services to those who simply cannot afford a pay-as-you-go arrangement. And it works from the Bar's standpoint, over time, when the "winners" and "losers" are averaged out. Thus, trying to jimmy considerations of a contingent fee into the calculation of a statutorily or contractually mandated reasonable fee is conceptually a classic exercise in comparing apples and oranges, if not apples and crayfish.

¶ 24 Second, a contingent fee arrangement is a contractual matter between an attorney and his or her client. As such, it is really of no concern to third parties, including opposing parties who are required to pay, not the fee that the client is required to pay, but rather a *reasonable fee.* While I am content to leave definitive resolution of the matter to another day,[1] it seems to me that the litigant legally responsible to pay a reasonable fee

1. That day may be a long time in coming. Contingent fees are much more common in the tort realm, where attorney fee awards as a matter of statutory or contractual entitlement are typically not available, at least outside the civil rights arena. And footnote 3 of the lead opinion suggests that in the latter context, the relevance of a contingent fee arrangement has already been rejected. It is much less common—although not unheard of—to have a contingent fee arrangement in, say, a contract dispute.

cannot be saddled with the amount of a contingent fee if that amount is higher, and likewise ought not be able to have his legal responsibility to pay a reasonable fee subverted by the happenstance that opposing counsel's contingent fee—the fee the client owes his or her attorney—works out to be less than a traditionally calculated reasonable fee—the fee the responsible litigant owes.