**IBM CREDIT CORPORATION,**
**Plaintiff–Appellee,**

v.

**The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF JEFFERSON AS the COUNTY BOARD OF EQUALIZATION; Rich Ferdinandsen, Marjorie Clement, and John Stone as members of the Board of Commissioners of the County of Jefferson and of the County Board of Equalization; and Judy Pettit as the Assessor of the County of Jefferson, Defendants–Appellants.**

No. 92CA1084.

Colorado Court of Appeals,
Div. V.

Aug. 19, 1993.

Rehearing Denied Sept. 30, 1993.

Certiorari Granted March 21, 1994.

Burns, Wall, Smith and Mueller, P.C., George W. Mueller, Steven F. Mueller, Denver, for plaintiff-appellee.

Patrick R. Mahan, County Atty., Brian L. Utzman, Asst. County Atty., William A. Tuthill, III, Asst. County Atty., Golden, for defendants-appellants.

Opinion by Judge RULAND.

Defendants, the Board of County Commissioners of Jefferson County, acting as the County Board of Equalization, the Board members, and the Assessor (collectively, "County"), appeal from the order of the district court determining the 1991 tax year valuation of computer equipment owned by IBM Credit Corporation (taxpayer). We affirm.

The equipment consists of an IBM 3090 Model 200J central processing unit (3090 unit) leased to Adolph Coors Company. Based upon the cost approach to valuation, the assessor placed a value of $5,585,138 on the 3090 unit and accessories. Taxpayer filed a protest on the grounds that the assessor had failed to consider both the market approach and obsolescence as required by § 39-1-104(12.3), C.R.S. (1992 Cum.Supp.).

The protest was denied, and taxpayer appealed to the County Board of Equalization. After a hearing, the appeal was denied. Taxpayer then filed its complaint in the trial court seeking *de novo* review of the assessment.

At trial, taxpayer offered the testimony of its expert who testified that the value of the 3090 unit was not more than $3,230,000 based upon the market approach to valuation. The expert based this opinion upon the negative impact on value caused by the announcement of the IBM ES-9000 series of computers, as

reflected by two publications that record prices of used computer equipment, namely, *Computer Price Watch* and *Computer Price Guide.*

The expert testified that he considered these publications as reliable sources of pricing information within the industry and that the *Computer Price Guide* is the equivalent of the "blue book" used in the automobile industry to value used automobiles. He also testified that he relied upon projections of "residual" computer values contained in the Gartner Group publication, *Financial Strategies,* to confirm his valuation.

The County presented the testimony of its supervisor for the personal property section of the assessor's office. This witness stated that he had valued the 3090 unit using the cost approach, under which the acquisition cost information provided by taxpayer had been brought to current value using a division of property tax table to account for depreciation. Under this method of valuation, economic and functional obsolescence were not considered.

Neither party presented testimony in support of an income approach to valuation.

The trial court found that physical depreciation was not applicable to the 3090 unit because obsolescence in computer equipment had occurred as the result of changes in technology. As a result, the trial court concluded that the cost approach utilized by the assessor was inappropriate.

The trial court found that the publications relied upon by taxpayer's expert were reliable sources of pricing information. The trial court thus found the taxpayer's evidence more persuasive and adopted its valuation of the 3090 unit for tax purposes.

## I

■ The County in effect contends that the trial court erred in determining that the presumption of validity accorded an assessor's valuation was negated here solely because of the assessor's failure to consider obsolescence. We disagree.

■ Obsolescence may be a relevant factor in determining the actual value of personal property. *See County Board of Equalization v. Board of Assessment Appeals,* 743 P.2d 444 (Colo.App.1987). Indeed, § 39–1–104(12.3)(a)(II), C.R.S. (1992 Cum.Supp.) requires consideration of "[p]hysical, functional, and economic obsolescence" in determining actual value.

As a result, the Personal Property Valuation Manual prepared pursuant to § 39–1–104(12.3)(a)(I), C.R.S. (1992 Cum.Supp.), specifically provides that in valuations based upon the cost approach, both functional and economic obsolescence are considered. 5 *Assessor's Reference Library* § III at 3.10 (as Revised 1–91). The Manual recognizes that "losses in value due to functional or economic causes are not related to the actual age of the property but rather to market forces...." 5 *Assessor's Reference Library* at 3.11.

Contrary to the County's contention, there is no requirement in the statutes or in the Manual that actual sales of new computer equipment must take place before obsolescence of older equipment may be recognized. Indeed, such a requirement would effectively obscure the realities of the market place because the announcement of a new and technologically better product often impacts the price of older models.

Here, the evidence is uncontroverted that with the announcement of the IBM ES–9000 series of computers, a significant impact on market prices for the 3090 unit resulted and that, therefore, functional obsolescence was a relevant consideration to valuation in this case. Hence, there is record support for the trial court's decision to disregard the County's cost approach to valuation. *See Arapahoe Partnership v. Board of County Commissioners,* 813 P.2d 766 (Colo.App.1990).

## II

■ The County next contends that the trial court erred in relying upon the testimony of taxpayer's expert in determining the value of the 3090 unit. Specifically, the County argues that the pricing manuals are incompetent as evidence because the names of the parties, the dates, and a verification of "arms lengths" negotiations are not recorded

for each sale. In addition, the County complains that items such as transportation and set up costs are included in the various transactions. Finally, the County notes that sales occurring after the statutory valuation date are included in the pricing manuals relied upon by the expert. We find no merit in these contentions.

### A

Section 39–1–104(12.3)(a)(I), C.R.S. (1992 Cum.Supp.) provides that:

> The actual value of personal property shall be determined by appropriate consideration of such of the three approaches specified in section 39–1–103(5)(a) [cost, market, and income] as are applicable to the appraisal of such property....

The Manual addresses in detail the market approach to valuation. 5 *Assessor's Reference Library* at 3.16–3.24. The Manual indicates that the use of the market approach is appropriate whenever there is sufficient comparable sales data. 5 *Assessor's Reference Library* at 3.16.

While the Manual confirms that an analysis of market sales is required and that the information suggested by the County is preferable in obtaining, verifying, and analyzing sales data, it also provides:

> There are several sources of comparable market data.... Used equipment guides may indicate the market value of used equipment.... Documentation as to the methodology used in determining the used values and the sources for this data should be requested before adopting the value as actual value. In addition, the comparability of the property listed in the equipment guide to the subject property must be determined.

5 *Assessor's Reference Library* at 3.19.

Here, taxpayer's expert testified concerning the methodology used in determining the values stated in the guides and the sources for the data, and he explained the comparability element required in the Manual. He described the method by which he selected and adjusted the sales data contained in the guides to assure comparability with the 3090 unit. While the guides contain a disclaimer indicating that the price data should not be considered an exact price, the expert explained that the sales data is screened by the guides to eliminate those sales that are not "arms length" transactions.

As a result, we agree with the trial court's conclusion that taxpayer properly relied upon the equipment guides in expressing its opinion of value and that the evidence was not statutorily incompetent for the purpose of establishing market value in this case.

### B

■ Contrary to the County's contention, we do not view § 39–1–103(8)(a)(I), C.R.S. (1992 Cum.Supp.), as also mandating a rejection of the pricing guides. That section provides:

> [I]n the determination of actual value of any taxable property, the following limitations and conditions shall apply:
>
> (a)(I) .... all sales shall be included in the sample ... during the period specified in section 39–1–104(10.2) or (10.3), whichever is applicable.

Section 39–1–104(10.2)(d), C.R.S. (1992 Cum.Supp.) provides that:

> '[L]evel of value' means the actual value of taxable *real property* as ascertained by the applicable factors enumerated in section 39–1–103(5) for the one-and-one-half-year period immediately prior to July 1 immediately preceding the assessment date.... (emphasis supplied)

Section 39–1–104(10.3), C.R.S. (1992 Cum. Supp.) contains the same requirement for the property tax year commencing January 1, 1997.

■ In our view, because of the reference to subsections § 39–1–104(10.2) and § 39–1–104(10.3), this provision must be construed to apply to real and not personal property. No similar express restriction was included for personal property. *See* § 39–1–104(12.3)(a)(I). Hence, the trial court properly concluded that the statutory scheme for valuation does not preclude the use of current data in the market approach to valuation of personal property. Further, it properly concluded that the inclusion of this data im-

pacts the weight to be given this evidence and not its admissibility.

We conclude that the same analysis applies to the inclusion of transportation and set up costs.

Questions relative to the weight of the evidence are determined by the finder of fact. *See Cottonwood Hill, Inc. v. Ansay,* 709 P.2d 62 (Colo.App.1985).

Here, the trial court found with record support that the guides were a reliable source of pricing information for comparable sales, and we may not disturb this finding on appeal. *See Peterson v. Ground Water Commission,* 195 Colo. 508, 579 P.2d 629 (1978).

The judgment is affirmed.

ROTHENBERG and BRIGGS, JJ., concur.