**BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF JEFFERSON, as the County Board of Equalization; Rich Ferdinandsen, Marjorie E. Clement and John P. Stone, as members of the Board of County Commissioners and for the County Board of Equalization, and Judy Pettit, Assessor of the County of Jefferson, Petitioners,**

v.

**IBM CREDIT CORPORATION, Respondent.**

No. 93SC643.

Supreme Court of Colorado, En Banc.

Jan. 17, 1995.

Frank J. Hutfless, Jefferson County Atty., Brian L. Utzman, William A. Tuthill III, Lily W. Oeffler, Asst. County Attys., Golden, for petitioners.

Burns, Wall, Smith and Mueller, P.C., George W. Mueller, Steven F. Mueller, Denver, for respondent.

Chief Justice ROVIRA delivered the Opinion of the Court.

In *IBM Credit Corp. v. Board of County Commissioners*, 870 P.2d 535 (Colo.App. 1993), the court of appeals upheld the use of three computer publications to value a computer for taxation purposes. We granted certiorari to determine whether it erred in

concluding that: (1) section 39–1–103(8)(a)(I), 16B C.R.S. (1994) applies only to real property and not personal property; and (2) the information used in the valuation of the computer conformed to statutory requirements. We affirm.

I.

For the 1991 tax year, the Jefferson County assessor valued an IBM ES3090, Model 200J Central Processing Unit (the computer) at $4,271,533 using a cost approach.[1] IBM Credit Corporation (taxpayer) protested the valuation for failure to consider the market approach and obsolescence as required by section 39–1–104(12.3), 16B C.R.S. (1994).[2] The assessor denied the protest and taxpayer appealed to the Jefferson County Board of Equalization. After the Board denied the appeal, the taxpayer filed a complaint in the district court seeking *de novo* review pursuant to section 39–8–107(1), 16B C.R.S. (1994).

The court heard testimony from taxpayer's expert witness that the computer's value was not more than $3,230,000 based on a market approach to valuation. He testified that the announcement of the new IBM ES–9000 series of computers had a negative impact on the computer's value. He based his opinion, in part, on the January 1991 issues of *Computer Price Watch* and *Computer Price Guide* and a November 15, 1990, Gartner Group, Inc. Residual Value Projection (pricing guides).

The County's expert testified that he used the cost approach, which values property based on acquisition cost information provided by the taxpayer, and a Department of Property Taxation tax table to account for depreciation. He did not consider economic or functional obsolescence in valuing the computer.

1. Section 39–1–103(5)(a), 16B C.R.S. (1994), provides "the actual value of [real and personal] property ... shall be that value determined by appropriate consideration of the cost approach, the market approach and the income approach to appraisal."

2. Section 39–1–104(12.3), 16B C.R.S. (1994) provides the following:
   (a)(I) The actual value of personal property shall be determined by appropriate consider-

ation of such of the three approaches specified in section 39–1–103(5)(a) as are applicable to the appraisal of such property....
   (II) In determining actual value, depreciation attributable to age shall not exceed that for the actual age of the property on the assessment date. Physical, functional and economic obsolescence shall be considered in determining actual value.

The trial court found that obsolescence must be considered by the taxing authority, that the general depreciation tax table could not be used on this type of equipment because it failed to consider the fast-paced technological changes in this type of equipment, and that the pricing guides were reliable sources of pricing information. The trial court concluded that the cost approach used by the county assessor was inappropriate and adopted taxpayer's valuation.

On appeal by Jefferson County, the court of appeals held the record supported the trial court's decision to disregard the County's cost approach to valuation. It rejected the County's argument that the pricing guides did not satisfy the time limitations in section 39–1–103(8)(a)(I), 16B C.R.S. (1994). It construed that section as applying to real property only and upheld the trial court's conclusion that the taxpayer properly relied on the pricing guides. The court also held functional obsolescence was a relevant consideration in the valuation of the computer.

## II.

Section 39–1–103(8)(a)(I), 16B C.R.S. (1994) states:

(8) In any case in which sales prices of comparable properties within any class or subclass are utilized when considering the market value approach to appraisal in the determination of actual value of any taxable property, the following limitations and conditions shall apply:

(a)(I) Use of the market approach shall require a representative body of sales sufficient to set a pattern and appraisal shall reflect due consideration of the degree of comparability of sales, including the extent of similarities and dissimilarities among properties which are compared for assessment purposes. In order to obtain a reasonable sample and to reduce sudden price changes or fluctuations, all sales shall be included in the sample which reasonably reflect a true and typical sales price during the period specified in section 39–1–104(10.2) or (10.3), whichever is applicable. Sales of personal property exempt pursuant to provisions 39–3–102, 39–3–103, and 39–3–119 to 39–3–122 shall not be included in the sample.

The first issue to be resolved is whether subsection (8)(a)(I), with an eighteen-month time limitation for information used in property valuation, applies exclusively to real property. The County insists the plain language of the statute supports the conclusion that it applies to both real and personal property. The County maintains that the reference to section 39–1–104(10.2) and (10.3) defines a "level of value" for the actual value for all property as ascertained for the eighteen-month period immediately prior to July 1, preceding the assessment date.[3] The County contends that the 1991 guides contained evidence of market value beyond June 30, 1990, and therefore they were not within the statutory time frame. Taxpayer argues section 39–1–104(12.3), which has no time frame for information used in valuation, controls personal property valuation.

### A.

The primary goal in determining the meaning of a statute is to ascertain and give effect to legislative intent. If possible, the courts determine this intent by giving words their plain and ordinary meaning. In interpreting a statute, the court seeks to avoid a construction which leads to an absurd result.

Section 39–1–103(8) begins with broad language indicating it applies "[i]n any case" and "to any taxable property."[4] However, section 39–1–103(8)(a) contains several references to the valuation of real property as

---

**3.** Section 39–1–104(10.2)(a) and (10.3)(a) contain very similar provisions and pertain to different years of valuation. Section 39–1–104(10.2)(a) applies to the tax year in question:

At the beginning of each reassessment cycle in the determination of actual value of real property in any county of the state as reflected in the abstract of assessment for each year in the reassessment cycle shall advance two years over what was used in the previous reassessment cycle; except that the level of value to be used for the years 1989 and 1990 shall be the level of value for the one-half years immediately prior to July 1, 1988.

**4.** Section 39–1–102, 16B C.R.S. (1994) defines "property" as both real and personal property.

opposed to personal property. It cites to sections 39–1–104(10.2) and (10.3), both of which specifically apply to the reassessment cycle of real property. Section 39–1–104(10.2)(d) and (10.3)(d) define the term "level of value" as the actual value of taxable real property, not the actual value of all property.[5] Section 39–1–103(8)(a)(I) requires the sample of comparable properties reflect "true and typical sales." Subsection (f) defines "true and typical sales" as including "only those sales which have been determined on an individual basis to reflect the selling price of the *real property* only . . . ." (emphasis added).

Subsection (8)(a)(I) excludes exempt personal property from comparable property samples.[6] The County argues the reference to personal property in the statute indicates that any non-exempt personal property must be valued according to the statute. We find this an overbroad interpretation. A more logical interpretation is that the exempt personal property is excluded so appraisers value real property without personal property which may be included in the sale.[7]

### B.

■ Our examination of the language of subsection (8)(a)(I) does not resolve the conflict as to whether the subsection applies only to real property. When a statute is clear, courts do not need to review legislative history. However, if the statutory language is unclear, then courts may properly review pertinent legislative history to determine the objective sought by the legislature. This includes consideration of the history of a statute including prior statutes on the same subject, bill titles, and amendment history.

The bill titles amending the statutes in question provide some insight. The title of H.B. 1452, which added subsection (8)(a) to section 39–1–103, was "[a]n act concerning property taxation." Ch. 494, 1977 Colo.Sess. Laws 1728. This does not resolve the ambiguity. However, the legislature added subsection (8)(a)(I) in H.B. 1204 entitled "[a]n act concerning the valuation of certain classes of real property for property taxation purposes." Ch. 296, 1985 Colo.Sess.Laws 1209. Further, H.B. 1112 which added subsection (12.3) to section 39–1–104 had the title "[a]n act concerning the assessment of personal property." Ch. 155, 1980 Colo.Sess. Laws 714. Although not conclusive, these titles suggest section 39–1–103(8)(a)(I) applies to real property valuation and section 39–1–104(12.3) *controls personal property* valuation.

The amendments to sections 39–1–103 and 39–1–104 *more fully reflect the legislature's* intent. House Bill 1452 amended subsection (5) and added subsections (7) and (8) to section 39–1–103. Ch. 494, Sec. 2, § 39–1–103, 1977 Colo.Sess.Laws 1729. The first half of subsection (5)(a) addressed the valuation of both real and personal property by considering several enumerated factors. One of those factors was comparison with other properties. *Id.* The latter half of subsection (5)(a) stated that the consideration of market value in the comparison of properties was limited to eighty-five percent of the average sales price of comparable properties within the same class or subclass. The term "comparable property" was used again in subsection (8)(a) which contained limitations when an assessor used the market approach.

---

5.  Section 39–1–104(10.2)(d) states "For purposes of this article and article 9 of this title 'level of value' means the actual value of taxable real property as ascertained by the applicable factors enumerated in section 39–1–103(5). . . . "

    Assessors also adjust the current actual value of personal property to the level of value in effect for real property. § 39–1–104(12.3)(a)(I). This is done by multiplying the current actual value estimate by the appropriate factor for the type of property being valued. *Personal Property Valuation Manual,* 5 Assessors Reference Library § IV app. D (1990).

6.  Section 39–1–103(8)(a)(I) provides "[s]ales of personal property exempt pursuant to the provisions of sections 39–3–102, 39–3–103, and 39–3–119 to 39–3–122 shall not be included in any such sample."

7.  The statutory sections referenced in section 39–1–103(8)(a)(I) exempts the following from taxation: (1) *household furnishings;* (2) *personal effects;* (3) inventories; (4) livestock; (5) agricultural and livestock products; (6) agricultural equipment used in production of agricultural products.

The hearings on H.B. 1452 imply a connection between the latter half of subsection (5)(a) and subsection (8). *Hearing on H.B. 1452 Before the House Finance Comm.*, 51st Gen.Ass., 1st Sess. (Mar. 7, 1977). Representative Carl Bledsoe, the bill's sponsor, stated that the latter portion of subsection (5)(a) applies to residential property sales. *Id.* He then discussed subsection (8)(d) explaining that "sales ratio data, if used, must be based on least thirty sales or five percent of all sales, whichever is the greater." *Id.* Before the Senate Finance Committee, Representative Bledsoe testified concerning the use of sales information to determine market value. He stated that the eighty-five percent valuation applied to houses and "if you used any sales data it must be based in an area of at least thirty sales or five percent of all sales, whichever is the greater."[8] *Hearings on H.B. 1452 Before Senate Finance Comm.*, 51st Gen.Ass., 1st Sess. (April 20, 1977). These hearings indicate that subsection (8) clarified the latter portion of (5)(a) and applies only to real property.[9]

Assuming *arguendo* subsection (8)(a)(I) originally applied to both real and personal property, the addition of subsection (12.3) to section 39–1–104 removed personal property valuation from (8)(a)(I).[10] Hearings on H.B. 1112. Ch. 155, 1980 Colo.Sess.Laws 714 demonstrate H.B. 1112 was introduced to provide specific procedure for valuing personal property. *Hearing on H.B. 1112 Before House Finance Comm.*, 52nd Gen.Ass., 2nd Sess. (Jan. 23, 1980) (statement by Representative Carl Bledsoe). Representative

Bledsoe, the bill's sponsor, explained to the committee that H.B. 1452 did not address personal property valuation in any depth.[11] *Id.* House Bill 1112 attempted to cure the inequities between personal property and real estate and within the class of personal property. *Id.* (statement by Mary Ann Aciero, testifying before the committee). Representative Bob Kirscht stated H.B. 1452 was problematic with regard to personal property from its conception. *Id.* Representative Mike Callihan offered an amendment to the bill during the hearing to include the language "actual value for the current year of assessment," so that the assessor computes the current value regardless of which year the property is being valued and would not confuse it with the base year valuation. *Id.* This directly conflicts with the County's argument that the eighteen-month time frame used for valuing real property applies to personal property. Section 39–1–104 (12.3) and not 39–1–103(8)(a)(I) applies to the valuation of personal property.[12]

Additionally, the *Personal Property Valuation Manual* supports this conclusion. 5 *Assessors Reference Library* (1990) (hereinafter the Manual). The section entitled "Applicable Property Tax Laws," states the assessor must determine the current actual value of personal property under section 39–1–104(12.3)(a)(I). 5 *Assessors Reference Library* 7. It does not mention section 39–1–103(8)(a)(I) as a statutory basis for personal property valuation. *Id.* The section requires "[t]he most current valuation informa-

---

**8.** The provision of valuing residential homes at an eighty-five percent valuation of comparable properties was removed from section 39–1–103(5)(a) in H.B. 1496, Ch. 444, Sec. 1, § 39–1–103(5)(a), 1981 Colo.Sess.Laws 1829.

**9.** The legislature added subsection (8)(a)(I) to the statute in H.B. 1204, Ch. 296, Sec. 4, 1985 Colo. Sess.Laws 1210. The section was an enabling provision but the legislature did not discuss its application to either real or personal property. *See Hearings on H.B. 1204 Before House Finance Comm.*, 55th Gen.Ass., 1st Sess. (Feb. 21, 1985) (statement by Jim Wilson).

**10.** Subsection (12.3)(a)(I) provided:

Except as otherwise provided by law, the actual value of personal property shall be determined by consideration of such of the factors

specified in section 39–1–103(5)(a) as are applicable to the appraisal of such property.... Ch. 155, Sec. 1, § 39–1–104(12.3)(a)(I), 1980 Colo.Sess.Laws 715.

**11.** We interpret Representative Bledsoe's statement to mean H.B. 1452 included the valuation of personal property in subsection 5(a). However, the specific and detailed provisions of subsection (8)(a) did not apply to personal property.

**12.** House Bill 1016 further supports this conclusion. Ch. 425, Sec. 3, § 39–1–104(12.3)(a)(I), 1983 Colo.Sess.Laws 1482. In that bill the legislature removed the first phrase "except as otherwise provided by law" from subsection (12.3)(a)(I) which shows legislative intent that assessors use subsection (12.3) exclusively when valuing personal property.

tion available must be gathered and analyzed. Assessors should consider current economic conditions when appraising personal property and must document physical, functional and economic obsolescence as of the assessment date." *Id.* This directly contradicts the County's argument that an eighteen-month time frame limits the information used in assessing the actual value of personal property.

The statutory language, the legislative history, and the Manual all support the conclusion that the court of appeals properly concluded that section 39–1–103(8)(a)(I) applies to real property and not personal property.

### III.

The County also asserts that the computer pricing guides do not comply with the Manual because they do not meet the minimum standards set out in the Manual. The Manual provides the following:

> *Minimum Standards for Sales Data:* The following are the minimum requirements for the sales data used in the market approach: Date of Sale, Sale Price, Condition of sold property, Age of the sold property, Location of the sale, Buyers and sellers names and addresses, Special terms of sale, if any, Complete description of sold property, any unusual conditions surrounding the sale.

5 *Assessors Reference Library* 3.17–3.18.

The Manual enumerates the sources of comparable market data. These sources include the taxpayer, auction sales and used equipment guides.

> Used equipment guides may indicate the market value of used equipment. The assessor determines the applicability of the values reported in these guides to operating, functional property, since some guides report values for disassembled, non-installed properties. Documentation as to the methodology used in determining the used values and the sources for this data should be requested before adopting the value as

actual value. In addition, the comparability of the property listed in the equipment guide to the subject property must be determined.

*Id.* at 3.19.

The Manual recognizes sales data are difficult to obtain. It states "[s]everal companies publish pricing guides for personal property. These manuals are updated periodically and provide information for the assessor to use, especially in cases where no other information is available." *Id.* at 3.8. The Manual lists the *Computer Price Guide* as one of these guides. *Id.* at 3.9.[13] It continues "[t]he manuals provide a valuable cross-check to estimates of RCN made for appraisal." *Id.*

■ The County contends the use of the guides is restricted to providing a cross-check for estimates. This contradicts what the Manual explicitly permits. The Manual allows for the use of pricing guides even though they do not contain all of the specific information required under the minimum standards for sales data. We hold the guides can be used either as an initial guide to value personal property when no other information is available, or as a cross-check when more information exists. The Manual provides appropriate guidelines for their admission in the section on used equipment guides. *Id.* at 3.19.

The court of appeals found the taxpayer's expert based his opinion, in part, on the pricing guides and that the guides were a reliable source of pricing information. We agree that the taxpayer properly relied upon the pricing guides and that they met the statutory requirements.

### IV.

We hold subsection (8)(a)(I) of section 39–1–103, 16B C.R.S. (1994), applies to real property and not personal property. Pricing guides used by the taxpayer need not con-

---

**13.** This provision appears in the section for the cost approach to valuation. However, we find it has a general applicability to the use of equipment guides in the market approach to valuation. Provisions of administrative rules should be con-

strued in connection with each other so the rule is interpreted as a whole. *Regular Route Common Carrier Conference v. Public Util. Comm'n,* 761 P.2d 737, 746 (Colo.1988).

form to the time limitations of that section. We hold that the pricing guides complied with the Personal Property Valuation Manual requirements and reliance on the guides in making market valuations of a used computer was appropriate. We affirm the court of appeals.