Vicki L. GROGAN, Petitioner,

v.

**LUTHERAN MEDICAL CENTER, INC.,**
and The Industrial Claim Appeals Office
of the State of Colorado, Respondents.

No. 97CA0811.

Colorado Court of Appeals,
Div. IV.

Dec. 26, 1997.*

Law Office of Neil O'Toole, P.C., Neil D. O'Toole, Denver, for Petitioner.

Weinberger & Kanan, P.C., Michael W. Sutherland, Denver, for Respondent Lutheran Medical Center, Inc.

No Appearance for Respondent Industrial Claim Appeals Office.

Opinion by Judge ROY.

Petitioner, Vicki L. Grogan (claimant), seeks review of a final order of the Industrial Claim Appeals Office (Panel) which affirmed an order of the Administrative Law Judge (ALJ) denying her claim for temporary total disability benefits (TTD) while she received job placement services. We affirm.

The pertinent facts are undisputed. In July 1991, claimant sustained a compensable injury while working for Lutheran Medical Center (Lutheran). In July 1995, claimant was placed at maximum medical improvement (MMI) and assigned a medical impairment rating of 24% of the whole person. Lutheran then filed a final admission of lia-

---

* Opinion previously announced as non-published November 20, 1997, is now selected for publica-       tion.

bility, admitting liability for benefits of approximately $62,472.90 which had previously been paid. This amount exceeded the $60,000 benefit cap set forth in § 8–42–107.5, C.R.S.1997, for injuries when a claimant's impairment rating is 25% or less of the whole person.

In late March or early April 1996, Lutheran offered claimant "job placement assistance" to be provided by a vocational rehabilitation firm. Claimant accepted the offer and attended two job interviews arranged by the vocational firm, which also provided several other services, including resume preparation.

After accepting the offer of job placement services, claimant filed a notice of hearing on the issue whether she was entitled to rehabilitation maintenance benefits during the time she received job placement services. At the hearing, claimant argued that the job placement services constituted "vocational rehabilitation" and that, therefore, she was entitled to ongoing TTD benefits pursuant to § 8–42–105(1), C.R.S.1997, as long as she received those services.

She further asserted that any such TTD benefits she received were in the nature of vocational rehabilitation maintenance benefits and thus were not subject to inclusion in the calculation of the $60,000 benefit cap.

Lutheran responded, taking the position that the offer of job placement was not vocational rehabilitation and, therefore, it was not willing to reinstate TTD benefits. It further argued that, even if the job placement constituted vocational rehabilitation, claimant was not entitled to any further TTD benefits because the § 8–42–107.5 benefit cap had already been exceeded.

In resolving these issues, the ALJ reasoned that the benefits claimant sought were necessarily TTD benefits because rehabilitation maintenance benefits are not available under the Workers' Compensation Act. Thus, regardless of whether the job placement services constituted "vocational rehabilitation," claimant was not entitled to any additional TTD benefits as any such benefit was subject to the $60,000 cap which already had been

exceeded. The Panel affirmed and claimant now seeks review.

Claimant again argues that the job placement services constitute "vocational rehabilitation" for purposes of § 8–42–105(1). Then, relying primarily on *Donald B. Murphy Contractors v. Industrial Claim Appeals Office,* 916 P.2d 611 (Colo.App.1995), claimant contends that the § 8–42–107.5 cap does not apply because she would receive TTD benefits because of her acceptance of an offer of vocational rehabilitation. We need not address her first argument because we disagree with her contention that the cap does not apply.

Section 8–42–107.5, which provides for a benefit cap, states in pertinent part:

> No claimant whose impairment rating is twenty-five percent or less may receive more than $60,000 from combined temporary disability payments and permanent partial disability payments....

In construing statutes, our primary task is to give effect to the intent of the General Assembly. To accomplish this, we turn first to the words of the pertinent statutes. *Farmers Group, Inc. v. Williams,* 805 P.2d 419 (Colo.1991).

Legislative words and phrases in a statute should be given their plain and ordinary meanings, *Snyder Oil Co. v. Embree,* 862 P.2d 259 (Colo.1993), and a forced, subtle, or strained construction should be avoided if the language is simple and the meaning is clear. *Wright v. Vail Run Resort Community Ass'n,* 917 P.2d 364 (Colo.App.1996).

If the statutory language is clear and unambiguous, we need not resort to other rules of statutory construction. *Snyder Oil Co. v. Embree, supra.*

Here, in construing the terms of the pertinent statutes, we agree with the ALJ that the benefits claimant sought were TTD benefits subject to the § 8–42–107.5 cap.

The section in the Act which provides for benefits during vocational rehabilitation, § 8–42–105(1), C.R.S.1997, provides that TTD benefits terminate upon the occurrence of any of the events enumerated in § 8–42–

105(3), C.R.S.1997, *except where* vocational rehabilitation has been offered and accepted pursuant to § 8–42–111(3), C.R.S.1997. Section 8–42–105(1) further provides that, if vocational rehabilitation is started, but later terminated, neither the employer nor insurer may recover any TTD benefits paid during vocational rehabilitation. Thus, by its own terms, § 8–42–105(1) establishes that disability payments made to a claimant during the provision of vocational rehabilitation constitute TTD payments.

Further, § 8–42–105(1) does not differentiate between TTD benefits paid to a claimant because of a physical impairment and those paid to a claimant because of vocational rehabilitation. We therefore reject, as did the Panel, claimant's implicit assertion that there is a distinction to be drawn between TTD paid on account of a claimant's physical impairment and those paid on account of vocational impairment.

While the grounds for paying TTD are different, the overall purpose for paying TTD is to alleviate claimant's loss of earning capacity. Thus, there can be no basis for distinguishing between the two types of benefits for purposes of the § 8–42–107.5 cap. *Cf. Colorado AFL–CIO v. Donlon,* 914 P.2d 396 (Colo.App.1995) (temporary disability benefits and medical impairment benefits are both designed to compensate for a claimant's lost earning capacity). Consequently, we conclude that TTD benefits paid to a claimant pursuant to § 8–42–105(1) are subject to inclusion in the § 8–42–107.5 cap.

This conclusion is supported by the plain language of § 8–42–107.5 which does not contain an exception, for purposes of calculating the cap, for temporary disability benefits paid on account of vocational rehabilitation. And, contrary to claimant's argument, we decline to read such an exception into the statute. *See Kraus v. Artcraft Sign Co.,* 710 P.2d 480 (Colo.1985) (court may not legislate provisions into the statute not expressly provided for by the General Assembly).

Further, we agree with the Panel that *Donald B. Murphy Contractors v. Industrial Claim Appeals Office, supra,* does not require a contrary conclusion. In that case, a division of this court held that the application of the § 8–42–107.5 cap is premature if a claimant is not at MMI as defined by § 8–40–201(11.5), C.R.S.1997. In doing so, the division reasoned that a claimant's impairment rating, and therefore the application of the cap, cannot be determined until claimant reaches MMI and an impairment rating is determined.

Here, there was no dispute that claimant's medical condition had stabilized and that her medical impairment rating had been determined at a level which implicates the § 8–42–107.5 cap. Thus, *Murphy* is distinguishable and does not support claimant's interpretation of § 8–42–107.5. This is particularly true, as the Panel likewise concluded, in that the definition of MMI found in § 8–40–201(11.5) makes no reference to whether a claimant's "vocational impairment" can be reduced through vocational rehabilitation.

Therefore, even if we assume the job placement services claimant received constituted vocational rehabilitation, the ALJ did not err in concluding that, because the § 8–42–107.5 cap had already been exceeded, claimant was not entitled to further temporary disability benefits.

We decline to address claimant's argument that it was premature to apply the cap because claimant's condition may have worsened as a result of the job placement services. This argument was not raised below and was not preserved for our review. *See Apache Corp. v. Industrial Commission,* 717 P.2d 1000 (Colo.App.1986).

Order affirmed.

STERNBERG, C.J., and NEY, J., concur.