**In the Matter of the ESTATE OF Rilla Sutton SHULER, Deceased.**

**Sherry West Winger, Petitioner–Appellant,**

**v.**

**Noel Barrett Shuler, Personal Representative of the Estate of Rilla Sutton Shuler, Respondent–Appellee.**

**No. 98CA0771.**

Colorado Court of Appeals, Div. II.

May 27, 1999.

Slivka Robinson Waters & O'Dorisio, Laura J. Vogelgesang, Denver, Colorado, for Petitioner Appellant.

Leonard F. Banowetz, Fort Collins, Colorado, for Respondent–Appellee.

Opinion by Judge PLANK.

Petitioner, Sherry Winger, appeals the probate court's order modifying the distribution of assets and directing the payment of certain costs of administering the estate. We affirm.

Rilla S. Shuler (decedent) died in June 1995. Her husband, Noel B. Shuler, was appointed the personal representative of the estate in July 1995 upon his petition in informal proceedings.

The estate was closed, without objection, by order for final settlement and distribution and decree of final discharge in September 1996 upon petition of the personal representative. Pursuant to the terms of decedent's will, certain estate assets were distributed to the trustee of decedent's revocable trust.

Because the personal representative had not received a closing letter from the Internal Revenue Service (IRS) or the Colorado Inheritance Tax Division, those assets were distributed subject to an indemnity agreement between the personal representative and petitioner, as sole beneficiary of the trust, that the assets would be held subject to any claim for any additional estate taxes. The trustee approved the indemnity agreement.

In May 1997, the personal representative received notice from the IRS that it was examining the estate tax return previously filed. The personal representative petitioned the probate court to reopen the estate and to reappoint him as the personal representative to deal with the IRS regarding the estate taxes. The probate court granted the petition in July 1997 by reopening the estate for six months, reappointing the personal representative, and authorizing him to "negotiate and settle with [the IRS] and the Colorado Inheritance Tax Division."

Ultimately, the IRS determined that a brokerage account listed as a probate asset on the estate tax return had been owned by decedent and her husband as joint tenants with right of survivorship and, consequently, that it was not a taxable asset of the estate. The IRS also determined that a retail and wholesale antique store operated by decedent and petitioner qualified as a hobby for estate tax purposes, that its assets were therefore not business property, and that decedent and her husband had owned those assets as joint tenants. Accordingly, the IRS concluded that those assets had passed to the husband by operation of law and were subject to the marital deduction. As a result of the changes to the estate tax return, the IRS refunded all of the estate tax paid, with interest.

During the course of the IRS' examination of the tax return, petitioner filed her petition seeking, among other things, removal of the personal representative for breach of his fiduciary duties, appointment of a special administrator, an order enjoining the personal representative from taking any action with respect to the estate, and an order surcharging the personal representative for additional fees and expenses incurred on behalf of the estate.

After several hearings, the probate court found that the antique store assets were held by decedent and her husband as tenants in common and that the assets of the antique store were used in a hobby and not for business purposes. The probate court therefore ordered the personal representative personally to pay the costs and fees for preparing and filing the amended tax returns, ordered that the professional fees of an accountant be paid by the estate, ordered petitioner to return to the personal representative all property she had taken or received from the antique store, and ordered the personal representative to retrieve sufficient funds and assets held in "escrow" to pay to himself the value of the brokerage account incorrectly distributed to the trustee for the benefit of petitioner. This appeal followed.

I.

Petitioner first contends that the probate court's denial of various claims in her petition and of certain motions violated her right to due process of law. We disagree.

As pertinent here, due process of law requires that, before a person may be deprived of life, liberty, or property, he or she must be afforded notice of the proceeding, a full and fair opportunity to be heard, and an impartial decision-maker. *Wecker v. TBL Excavating, Inc.,* 908 P.2d 1186 (Colo.App. 1995).

A.

Petitioner asserts that she was denied an opportunity to be heard on her petition for surcharge against the personal representative. We are not persuaded.

Because the probate court ordered the personal representative personally to pay the costs and fees necessary to correct the erroneous estate tax returns, and those expenses were not borne by the estate, petitioner was afforded the precise relief requested in her petition. Thus, she was not denied due process of law.

The probate court ordered the estate to pay the accountant's professional fees because his services benefited the estate. Because there is support in the record for the probate court's finding, we will not disturb it on appeal. *See IBM Credit Corp. v. Board of County Commissioners*, 870 P.2d 535 (Colo. App.1993), *aff'd on other grounds*, 888 P.2d 250 (Colo.1995).

The probate court heard substantial testimony by petitioner, the accountant, the personal representative, and others before determining that the estate should pay the accountant's professional fees. Thus, we are not persuaded that petitioner was denied an opportunity to be heard on this issue, and we conclude that the probate court did not err when it ordered that the accountant's fees be paid from the estate.

### B.

■ Petitioner further contends, however, that the probate court erred and denied her due process of law when it denied her request for attorney fees and other costs of bringing her petition. We disagree.

■ As a general rule, a party may not collect attorney fees absent a statute, rule, or contract provision authorizing such recovery. However, an exception exists authorizing, but not requiring, the court to award such fees when a party brings an action to recover damages resulting from a breach of fiduciary duty. *Buder v. Sartore*, 774 P.2d 1383 (Colo. 1989) (breach by custodian of child's funds); *Heller v. First National Bank*, 657 P.2d 992 (Colo.App.1982) (breach by trustee of express trust).

■ In considering a breach of fiduciary duty claim, we will reverse a trial court's denial of attorney fees on appeal only if it abused its discretion. *See Buder v. Sartore, supra.*

Here, the probate court found that the personal representative's errors were not fraudulent, a finding that is supported by evidence in the record, and our further review of the record reveals that the personal representative had embarked upon a course intended to repair the damage caused by his errors well before petitioner brought this action, and that petitioner was aware that he was doing so. Under these circumstances, the purposes of an action to remedy a breach of fiduciary duty are not frustrated if petitioner does not also recover her attorney fees, and we conclude that the probate court did not abuse its discretion by declining to award them to petitioner. *See Buder v. Sartore, supra.*

Moreover, because petitioner had no vested right to receive attorney fees, she had no property interest in recovering them. Thus, the probate court's denial of those fees did not deny her due process of law.

### II.

Petitioner contends that the probate court erred by ordering the personal representative to pay to himself the proceeds of the brokerage account from the funds in "escrow." We disagree.

The probate court found that the brokerage account had been held by decedent and her husband as joint tenants with right of survivorship. Although petitioner disputes that finding, it is supported by the record, and we will not disturb it on appeal. *See IBM Credit Corp. v. Board of County Commissioners, supra.*

Petitioner argues that, because of the provisions of § 15–12–1006, C.R.S.1998, the personal representative, in either his representative or individual capacity, is barred from proceeding against her pursuant to § 15–12–1004, C.R.S.1998 (authorizing claims against distributees for undischarged claims against the estate).

Section 15–12–1006 states in pertinent part:

> (1) Unless previously adjudicated in a formal testacy proceeding or in a proceeding settling the accounts of a personal representative or otherwise barred, the claim of any claimant to recover from a distributee who is liable to pay the claim, and the right of any heir or devisee or of a successor personal representative acting in their behalf, to recover property improperly distributed or the value thereof from any distributee is forever barred as follows:

(a) A claim by a creditor of the decedent is forever barred at one year after the decedent's death.

(b) Any other claimant or any heir or devisee is forever barred at the later of the following:

(I) Three years after the decedent's death; or

(II) One year after the time of distribution thereof.

(2) This section does not bar an action to recover property or value received as the result of fraud.

■ One of the express purposes of the Colorado Probate Code is to "promote a speedy and efficient system for settling the estate of the decedent and making distribution to his successors." Section 15–10–102(2)(c), C.R.S.1998. Consequently, the supreme court has held that § 15–12–1006, C.R.S.1998, is not a statute of limitations but is instead a nonclaim statute. Accordingly, the time limitations may not be tolled, and the statute acts to deprive the trial court of subject matter jurisdiction when it is applicable. *In re Estate of Daigle*, 634 P.2d 71 (Colo.1981).

### A.

■ Petitioner first argues that the personal representative's petition for final settlement and distribution of the estate, which was heard by the probate court in August 1996, constitutes a "proceeding settling the accounts of a personal representative" in which the issues relating to the improper distribution were adjudicated. Thus, petitioner maintains that any claim the estate or the personal representative, in either his representative or individual capacity, might assert against her or against the trustee as distributee for return of the brokerage account proceeds is now barred.

There is no statutory definition of "a proceeding settling the accounts of a personal representative." However, "settlement," in this context, is defined as "the full process of administration, distribution, and closing." Section 15–10–201(47), C.R.S.1998.

The probate court's decree of final discharge states in pertinent part:

[T]he personal representative of this estate ... has filed receipts showing compliance with the Order for Final Settlement and Distribution ... and the Court determines that the fiduciary should be discharged.

We conclude from the language of the petition, order, and decree that the closing of this estate constituted a proceeding settling the accounts of the personal representative.

■ However, the effect of the phrase "previously adjudicated" in the first sentence of § 15–12–1006(1) under these circumstances is ambiguous. The North Dakota Supreme Court, in construing its equivalent statute, has held that only a formal testacy proceeding or proceeding settling the accounts of a personal representative that unfavorably resolved the claim at issue creates an immediate bar to the assertion of the same claim against a distributee. *Ohnstad Twichell, P.C. v. Treitline*, 574 N.W.2d 194 (N.D. 1998).

In *Twichell*, during the hearing formally closing the estate, a law firm successfully asserted a claim for attorney fees. Because all the estate assets had previously been distributed, the estate was without funds to pay the claim. After the estate was formally closed, but within one year after the distribution of the assets, the law firm asserted the claim for attorney fees in a separate action against the distributees.

In affirming a summary judgment against the distributees, the North Dakota Supreme Court stated:

The appellants' argument would bar a proceeding ... to enforce a probate decree by claimants who not only had an unfavorable adjudication of their claim, but also by claimants who had a favorable adjudication of their claim. We can think of no plausible reason why a successful claimant who had received a favorable determination would be barred from invoking the statutory procedure for collecting from distributees....

We conclude the phrase 'undischarged claim' [in statute equivalent to § 15–12–1004, C.R.S.1998] and the phrase 'previously adjudicated' [in statute equivalent to

§ 15–12–1006, C.R.S.1998] mean a claim must have been previously adjudicated against the claimant in order to bar the claimant from using the statutory procedure to collect from distributees.

*Ohnstad Twichell, P.C. v. Treitline, supra,* 574 N.W.2d at 198.

We are not aware of any authority from this jurisdiction, or any other, construing the statute or deciding its applicability when a claim that arose upon or after the death of the decedent is first asserted against a distributee after the formal closing hearing.

Nevertheless, we find the reasoning of the *Twichell* court persuasive under these circumstances as well.

We therefore conclude that a claim not raised in a testacy proceeding or in a proceeding settling the accounts of a personal representative is not immediately barred by § 15–12–1006(1), C.R.S.1998. To hold otherwise would violate the policy that distributees take subject to claims against the estate, as expressed in § 15–12–1004, C.R.S.1998, and would render the phrase "unless previously adjudicated" in § 15–12–1006(1) superfluous.

### B.

■ Petitioner next contends that § 15–12–1006 bars the personal representative from recovering the previously distributed assets because he did not timely assert his claim. We disagree.

Section 15–12–1004, C.R.S.1998, clearly states that distributees take subject to undischarged claims against the estate. Such claims are, however, subject to the nonclaim provisions of § 15–12–1006(1). Thus, more than three years after the decedent's death, or one year after the distribution, whichever is later, no claim may be brought against a distributee for an unsatisfied claim against the estate, and a creditor's claim is barred one year after the death of the decedent. Because § 15–12–1006 is a nonclaim statute, those time limits may not be tolled, and, once expired, the trial court lacks subject matter jurisdiction to consider such claims. *In re Estate of Daigle, supra.*

As a threshold matter, petitioner urges that the personal representative, acting in his individual capacity seeking return of his property, is a creditor of decedent and that his claim is therefore barred by § 15–12–1006(1)(a), quoted above. We are not persuaded.

The phrase "creditor of the decedent" in § 15–12–1006(1)(a) is unambiguous, and we therefore apply the plain language of the statute without resort to other techniques of statutory construction. *See Grogan v. Lutheran Medical Center, Inc.,* 950 P.2d 690 (Colo.App.1997).

A "creditor of the decedent" is one who was owed something by the decedent prior to his or her death; such a claim becomes a claim against the estate if properly presented. In contrast, a "creditor of the estate" is one who is owed something that arises at or after the death of the decedent, pursuant to the administration of the estate. *See* § 15–10–201(8), C.R.S.1998.

The brokerage account was owned by decedent and her husband as joint tenants and accordingly passed to the husband by operation of law upon the death of decedent. Consequently, the husband's claim to the brokerage account proceeds did not arise during decedent's lifetime, but rather at or after her death. Therefore, we conclude that the husband is not a creditor of decedent and that his claim is not subject to the one-year bar of § 15–12–1006(1)(a), C.R.S.1998.

### C.

■ Petitioner next asserts, that decedent's husband never made an express claim against the estate, or against the trustee as distributee, or against petitioner, for the return of the proceeds of the brokerage account. We disagree.

The first event that might constitute a claim by the personal representative for the return of the brokerage account proceeds appears in his memorandum of April 21, 1998, which concludes with the following language:

[The trustee] should be ordered to distribute [the proceeds], together with interest ... to Mr. Shuler.

Our review of the record as a whole, and especially the transcripts of various hearings, indicates that, prior to April 1998, counsel for petitioner and for the personal representative on occasion assumed that a finding by the trial court that the brokerage account was held in joint tenancy might result in a modification of the distribution previously made. However, there is nothing prior to April 21, 1998, that could be construed as a claim by the personal representative in either his representative or individual capacity.

We conclude as a threshold matter that the personal representative's assertion in his memorandum in April 1998 was a sufficient claim on behalf of the estate against petitioner for the return of the brokerage account funds improperly transferred to the estate and subsequently distributed to the trustee. Because that memorandum was filed with the probate court approximately two years and ten months after the death of decedent, the probate court did not lack subject matter jurisdiction to consider that claim. *See* § 15–12–1006(1)(b), C.R.S.1998.

#### D.

However, that determination does not end our analysis, for a number of additional issues must also be addressed.

 Petitioner contends, in essence, that the probate court exceeded its jurisdiction by ordering the return of the brokerage account proceeds because the estate was reopened only for a limited purpose which did not include a modification of the previous distribution. We disagree.

Our review of the record reveals that the probate court's order authorized the personal representative only to resolve estate tax issues. However, the statute that authorizes the probate court to reopen administration does not require that the subsequent administration be limited in any way, and we conclude that the probate court had the authority under that statute to expand the personal representative's authority and the scope of the administration as necessary during the course of the proceedings. *See* § 15–12–1008, C.R.S.1998. While the better practice would be to expand the scope of the adminis-

tration only expressly by order upon petition or motion of a party, we conclude that the trial court did not exceed its jurisdiction or authority under the circumstances presented here.

#### E.

 Petitioner next contends that the trial court erred by determining the ownership of the brokerage account following a hearing because the purpose of that hearing was expressly limited by the probate court, and that purpose did not include such a determination. We agree with this contention in part, but we disagree with petitioner's conclusion.

By the probate court's orders, the early hearings in the subsequent administration were strictly limited to two issues raised by petitioner: the reasons for the IRS's examination of the estate's tax return and the adequacy of the notice petitioner received regarding the closing of the estate.

In March 1998, the probate court set a further hearing, scheduled in April 1998, to determine the "status" of the brokerage account and other assets because of "the proposed change in the distribution of assets." There is nothing in the record, however, to suggest that any party had at that time actually proposed a change in the distribution of assets.

Petitioner urges us to interpret the court's March 1998 order that the April hearing was only to determine the "status" of assets as limiting that hearing to a determination of the title to those assets at the time of decedent's death. We are not persuaded.

The probate court's statement that the determination of the status of those assets was the result of a proposed change in the distribution gave sufficient notice that the probate court was going to determine the present ownership and proper disposition of those assets and might alter the prior order of distribution accordingly. However, until petitioner had adequate notice that the personal representative was asserting a claim to have the brokerage account proceeds paid to him individually and a fair opportunity to be heard on those issues, she could not be de-

prived of her alleged interest in that property without violating her right to due process of law. *See Wecker v. TBL Excavating, Inc., supra.*

As discussed above, our review of the record reveals that the personal representative first asserted his claim in his memorandum filed eight days *after* the last hearing in the probate court. Ordinarily, under these circumstances, the proper remedy would be to remand the matter to the probate court to conduct a hearing to determine whether petitioner must return the brokerage account proceeds. Here, however, the probate court has already determined, and we have affirmed, that decedent's husband was the lawful owner of the brokerage account upon the death of his wife. We have determined, upon the record before us, that his claim against petitioner for the return of those funds is not time-barred and the probate court does not lack jurisdiction. Thus, a remand of this matter for a hearing on those issues would serve no useful purpose. The husband is entitled to recover the proceeds of the brokerage account.

### III.

#### A.

Petitioner contends that the probate court erred by ruling that the antique store was a hobby of decedent and her husband, and that its assets were therefore not business property for purposes of distribution under decedent's will. We disagree.

When no extrinsic evidence is necessary to ascertain the intent of the testator, the interpretation of a will is a question of law, and thus, we are not bound by the trial court's construction. *In re Estate of Grobman,* 635 P.2d 231 (Colo.App.1981). However, we will not disturb the trial court's determinations of factual questions that are necessary to carrying out the testator's expressed intent unless they are clearly erroneous. *O'Connor v. Rolfes,* 899 P.2d 227 (Colo. App.1994).

Decedent's will states, in pertinent part:

3.1 *Use of Memorandum.* I give all my personal and household property such as jewelry, clothing, furniture, furnishings, motor vehicles, sporting equipment, silverware, books and pictures, *but excluding property used in any business in which I may have any interest* ... in accordance with a written memorandum which I may leave at my death. If for any reason no memorandum is in existence at my death ... then I give such property to my Spouse, if my Spouse survives my death by thirty (30) days....

4.3 *Residuary Estate.* After the payment of all taxes and expenses and the distribution of property as described herein, I give my residuary estate in trust to [the trustee, for the benefit of petitioner] .... (emphasis added)

From this unambiguous language, and the undisputed fact that decedent's husband survived her by more than thirty days, we conclude, as did the probate court, that decedent's personal property, excluding property used in a business, was to be distributed to decedent's husband. The question of whether the property at issue was used in a business is, however, a question of fact.

Petitioner urges that the probate court erred as a matter of law because Colorado does not recognize a legal distinction between a business and a hobby or, alternatively, as we interpret her argument, that a finding that the antique store was a hobby is not conclusive as to whether its property was used for business purposes. We are not persuaded.

The probate court held, after a hearing and based upon supporting evidence, that the antique store was operated as a hobby and not as a business at the time of decedent's death. We therefore conclude that the probate court properly characterized the assets of the antique store as non-business personal property, and that those assets should pass to decedent's husband as devisee under paragraph 3.1 of the will.

#### B.

Petitioner also contends, for all the reasons set forth in Part II of this opinion, that the probate court erred by ordering that she return the assets of the antique store to

the personal representative for distribution to himself as devisee under decedent's will. We disagree.

The only significant differences between the assets of the antique store and the brokerage account proceeds, as determined by the probate court or undisputed in the record, are that: the personal representative never distributed those assets and apparently did not initially consider them property of the estate; decedent and her husband owned those assets as tenants in common; and petitioner retained possession of those assets rather than receiving them by distribution. Because the probate court's findings in this regard are supported by evidence in the record, we will not disturb them on appeal. *See IBM Credit Corp. v. Board of County Commissioners, supra.*

Consequently, § 15–12–1006, C.R.S.1998, the nonclaim statute, is inapplicable to the personal representative's claim for the return of these assets because the underlying claim is not against a distributee for return of improperly distributed property. The personal representative was seeking an accounting and replevin or damages against petitioner, and the probate court therefore properly ordered an accounting and the return of that property for distribution in accordance with decedent's will.

The probate court also properly declined to rule on issues concerning alleged promises made by the personal representative, in his individual capacity, to give assets of the antique store to petitioner. We agree with the probate court that petitioner may bring an appropriate action to enforce those alleged promises should she choose to do so.

The order of the probate court is affirmed.

Judge CRISWELL and Judge KAPELKE concur.