23CA1709 Estate of Archuleta 11-07-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1709
Mesa County District Court No. 20PR155
Honorable Jeremy Chaffin, Judge

In re the Estate of Gloria Frances Archuleta, deceased.

Maria Paula Gross,

Appellant,

v.

Michael Ray Archuleta,

Appellee.

ORDER AFFIRMED

Division VI
Opinion by JUSTICE MARTINEZ*
Welling and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 7, 2024

Davis Law Group, J.R. Davis, Grand Junction, Colorado, for Appellant

Chris Mahre & Associates, Chris Mahre, Grand Junction, Colorado, for Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Maria Paula Gross[1] appeals an order of the probate court asserting that the court erred in granting the petition to admit her mother's will to formal probate and for formal appointment of a personal representative (the order).  She also contends the court erred in admitting a real estate appraisal into evidence.  We perceive no error and affirm the order.

## I.    Background

¶ 2    Four adult children — Paula, Michael, Anthony, and Deanna — survived their mother, Gloria Archuleta, who died on November 30, 2020.

¶ 3    Approximately three weeks before Gloria's death, she signed a document titled "Last Will and Testament" (the will) that, among other things, named Michael as her first choice for appointment of personal representative of her estate.  That same day, Gloria also signed a beneficiary deed for her home that granted a 40% interest to Michael and 20% each to Paula, Anthony, and Deanna.

---

[1] The parties' briefs refer to appellant as Paula; we will do the same. Since the other parties are related and share the same last name, we refer to them by their first names.

¶ 4      In January 2021, Michael filed a petition for formal probate of the will and formal appointment of personal representative (the petition).  Shortly after Michael filed the petition, Paula filed a competing petition and an objection to the validity of the will (objection).  Paula's objection contested the will's formalities and Gloria's testamentary capacity to sign the will and asserted that Michael unduly influenced Gloria.

¶ 5      In August 2023, the probate court held an evidentiary hearing on the competing petitions and objections and heard testimony from Paula, Michael, Anthony, Deanna, Kristina Ross, and Kathleen Gerlock.  Kristina provided Gloria with in-home nursing care the months before Gloria signed the will, and Kathleen notarized[2] Gloria's signature on the will and beneficiary deed.

¶ 6      After considering the testimony of the witnesses and exhibits admitted into evidence, the district court made its findings of fact

---

[2] Although Kathleen notarized Gloria's signature on the will and beneficiary deed, Kathleen later stated that Gloria was not present when she notarized Gloria's signature.  Michael testified that Kathleen had Gloria acknowledge that Gloria signed the documents by telephone.

and conclusions of law on the record and issued the order. This appeal followed.

## II. Sufficiency of the Evidence

¶ 7 Paula contends the probate court erred in admitting the will to probate because the evidence was insufficient to support the court finding by clear and convincing evidence that the will represented Gloria's intent. We disagree.

### A. Standard of Review and Preservation

¶ 8 We generally review findings of fact under a clear error or abuse of discretion standard, while conclusions of law are typically reviewed de novo. *E-470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d 18, 22 (Colo. 2000).

¶ 9 A trial court's determination of factual disputes is accorded great deference. *In re Estate of Schumacher*, 253 P.3d 1280, 1282 (Colo. App. 2011). Thus, we will not disturb its determinations of factual questions that are necessary to carrying out a testator's expressed intent unless they are clearly erroneous. *In re Estate of Shuler*, 981 P.2d 1109, 1117 (Colo. App. 1999). Clearly erroneous means the findings of fact are unsupported by substantial evidence

in the record considered as a whole. *In re Estate of Perry*, 33 P.3d 1235, 1237 (Colo. App. 2001).

¶ 10    Paula filed an objection to the petition preserving the issue for our review.

## B.    Applicable Legal Principles

¶ 11    For a will to be valid, a testator must comply with the formalities set forth in section 15-11-502(1), C.R.S. 2024, which requires that a will be in writing, signed by the testator, and either witnessed by two or more individuals or acknowledged by the testator before a notary public. *In re Estate of Davies*, 2022 COA 90, ¶ 15.  However, a document is not necessarily precluded from being considered as that testator's will under section 15-11-503(1)(a), C.R.S. 2024, if minor flaws in the execution of the will exist and so long as "the proponent of the document or writing establishes by clear and convincing evidence that the decedent intended the document or writing to constitute," as relevant here, "[t]he decedent's will." *Compare In re Estate of Sky Dancer*, 13 P.3d 1231, 1233 (Colo. App. 2000) (concluding that the General Assembly authorized trial courts to permit the probate of wills which are flawed in execution, but nevertheless reflect the testator's

intent)*, with In re Estate of Wiltfong*, 148 P.3d 465, 468 (Colo. App. 2006) (noting that in 2001, the General Assembly adopted section 15–11–503(2) "to limit the harmless error concept to minor flaws in the execution of wills").

¶ 12    Section 15–11–503(2) "establishes the condition precedent that a document be 'signed or acknowledged by the decedent as his or her will' before a court may move to the next step and decide whether there is clear and convincing evidence the decedent intended the document to be a will." *Wiltfong*, 148 P.3d at 468 (quoting § 15-11-503(2)).

¶ 13    A proponent of a will has the primary burden of proof to show that the testator executed a document intended to be their will in accordance with the requirements of the law and that the document was the free and voluntary act of the testator. *Snodgrass v. Smith*, 94 P. 312, 313 (Colo. 1908). "Likewise, the burden of proof to show undue influence is upon the one who asserts it." *Id.*

## C.    Analysis

¶ 14    It is undisputed that Gloria's will did not comport with the formalities set forth in section 15-11-502(1) nor was it holographic under section 15-11-502(2). But the probate court found that

5

Gloria acknowledged the will; thus, the remaining matter for the court to decide, and the primary issue raised on appeal by Paula, was whether Michael presented clear and convincing evidence that Gloria intended the document she signed that was titled "Last Will and Testament" to be her will.

¶ 15    The probate court concluded that Michael satisfied his burden with clear and convincing evidence because the signature and initials on the will belonged to Gloria; Anthony and Deanna testified that the will comported with their understanding of Gloria's intent, which included providing Michael with a larger percentage of her estate; Kristina's and Kathleen's testimony corroborated Gloria's testamentary intent; "[a]ll of the witnesses generally testified that [Gloria] was able to understand what was going on [and] able to make decisions up until the last few days of her life"; and all witnesses, except Paula, testified that Michael appropriately cared for and loved Gloria and did not attempt to exert any influence on her.

¶ 16    After the probate court took testimony from Gloria's four adult children and the two non-interested parties, Kristina and Kathleen, and admitted exhibits into evidence, it assessed the credibility of

the witnesses and weighed the evidence it received. The probate court found that "all of the testimony presented show[ed] clear and convincing evidence that [Gloria] intended [the] document . . . to be her will" and that Paula failed to establish by a preponderance of the evidence that Michael unduly influenced Gloria or that Gloria lacked capacity.

¶ 17 Specifically, the court afforded the testimony of Anthony and Deanna weight when they "testified unequivocally that the will comported with their understanding of their mother's intent" and when Deanna testified that Gloria could not be convinced to do anything she did not want to do.

¶ 18 The court received and weighed competing testimony, which falls squarely in its province to assess the credibility of witnesses and to find facts. *See Page v. Clark*, 592 P.2d 792, 796 (Colo. 1979) ("The sanctity of trial court findings is derived from the recognition that the trial judge's presence during the presentation of testimonial evidence provides an unparalleled opportunity to determine the credibility of the witnesses and the weight to be afforded the evidence which is before the court.").

¶ 19    When we consider the record as a whole, it demonstrates that the probate court's findings of fact are supported by substantial evidence. *See Perry*, 33 P.3d at 1237. Three out of the four adult children testified that the will represented Gloria's testamentary intent. Two of the adult children, Anthony and Deanna, testified and confirmed that they should receive less interest in Gloria's estate than their brother, Michael, and they did not join their sister, Paula, in her objection to the will even though they would likely have received a larger share of Gloria's estate under an informal probate. Their testimony is strong support for the credibility of their understanding that Gloria intended to provide more for Michael than for her other adult children. Also, Kristina testified that Gloria acknowledged that she desired to have the will notarized and had the capacity to express such intent. Further, Kathleen testified that Gloria expressed her desire for Michael to have her home.

¶ 20    The probate court's finding that Gloria acknowledged the will and intended the document to be her will is supported by substantial evidence in the record considered as a whole. *See id.* Thus, we discern no error and will not disturb the court's

determination in carrying out Gloria's expressed intent here. *See Shuler*, 981 P.2d at 1117.

## III. Admission of Evidence

¶ 21 Next, Paula contends that the probate court improperly admitted into evidence an appraisal of Gloria's home under the business record exception to hearsay. Michael asserts that the probate court allowed the admission of the appraisal as a business record because it was relevant to matters in dispute, which included undue influence, and that if the probate court did err in admitting the appraisal any error was harmless. Assuming, without deciding, that the business record exception to hearsay did not permit the admission of the appraisal, any error in its admission here was harmless.

### A. Standard of Review and Preservation

¶ 22 We review a trial court's ruling admitting evidence under an abuse of discretion standard. *Genova v. Longs Peak Emergency Physicians, P.C.*, 72 P.3d 454, 458 (Colo. App. 2003). A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair or when it misapplies the law. *Rains v. Barber*, 2018 CO 61, ¶ 8.

¶ 23    However, even if an abuse of discretion is found, "[a] court's erroneous evidentiary ruling is reversible only if a substantial right of a party is affected; that is, if the error substantially influenced the outcome of the case." *In Interest of L.B.*, 2017 COA 5, ¶ 58; *see Askew v. Gerace*, 851 P.2d 199, 201-02 (Colo. App. 1992); *see also* C.R.C.P. 61.

¶ 24    Paula preserved this issue for our review through her counsel's objection to the admission of the appraisal into evidence at the evidentiary hearing.

## B.    Analysis

¶ 25    Here, the probate court's findings did not reference the appraisal. Based on the absence of any findings about the appraisal, it appears the court did not use the appraisal at all. Even Paula agrees that it is unclear how the probate court used the appraisal. Further, the appraisal could have only been relevant to Gloria's intent if the estate's size relative to the parties' financial positions would have made it more or less likely that Gloria intended the distribution of her estate expressed in her contested will. But the court made no mention of the size of the estate, and

there was no evidence presented concerning the financial position of the parties.

¶ 26 Instead, the probate court's findings regarding Gloria's intent all concerned the testimony of witnesses about her state of mind and expressed intent to leave Michael a larger interest in her estate because of his care for her at the end of her life and the time and expense he put into her home. Thus, we conclude that the admission into evidence of the appraisal did not substantially influence the outcome of the case. *See L.B.*, ¶ 58.

## IV. Disposition

¶ 27 The order is affirmed.

JUDGE WELLING and JUDGE BERNARD concur.